C. HENRY KIMBALL *vs.* POST PUBLISHING COMPANY.
WILLIAM GALLETLY *vs.* SAME.
C. HENRY KIMBALL *vs.* BOSTON TRANSCRIPT COMPANY.
WILLIAM GALLETLY *vs.* SAME.

Suffolk.   January 10, 1908. — June 15, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, & SHELDON, JJ.

*Libel and Slander.*

A fair report in a newspaper of pending judicial proceedings is privileged, and this privilege extends to the publication of the charges made in a bill in equity where a special order has been made by the court that the defendants shall appear and show cause why they should not be enjoined.

The publication in a newspaper of a fair report of the proceedings at a business meeting of the stockholders of a private corporation is not privileged, and it is no defense to an action for libel for such a publication that the matter complained of as libellous was contained in the remarks of a stockholder at the meeting which he was privileged to make because they related to a matter in which he and the other stockholders had an interest.

In an action for libel against the proprietor of a newspaper for publishing a report of a meeting of the stockholders of a private corporation in which the plaintiffs were charged with procuring fraudulently a majority of the stock of the corporation, it is no defense that the charge is the same as one made in a bill in equity in a pending suit, a statement of which was published at the same time and was privileged as a fair report of a judicial proceeding.

FOUR ACTIONS OF TORT FOR LIBEL, the first two by different plaintiffs against the Post Publishing Company and the last two by the same plaintiffs against the Boston Transcript Company. Writs dated January 17, 1903, and January 12 and September 27, 1904.

In the Superior Court the cases were tried together before *Bishop*, J. The character of the charges contained in the publications complained of is stated and described in the opinion. The judge instructed the jury as follows:

" The questions upon which evidence has been taken before you are two: first, as to whether there was on the part of the defendants malice towards the plaintiff in these articles; and, secondly, whether the articles were or were not a fair statement of the meeting and of what they purport to state concerning the legal proceedings. And upon such consideration as I can give to this case I rule to you that there is no sufficient evidence of malice in this case, nor that the articles in question are not fair accounts of the meeting and of what they purport to state of the bill in equity, to warrant a verdict for the plaintiff, and that independently of such evidence the publications are privileged and the plaintiff is not entitled to a verdict, and I direct you, gentlemen, to return verdicts for the defendants in these cases."

In accordance with this direction the jury returned verdicts for the defendants; and the plaintiffs alleged exceptions.

*H. N. Allin*, for the plaintiffs.

*J. T. Pugh*, for the defendants.

HAMMOND, J. The articles of which the plaintiffs complain contained reports of certain proceedings in court and also of a meeting of stockholders of a corporation called the Burrows Lighting and Heating Company.

So far as respects the report of the court proceedings the articles were privileged. This case differs materially from *Cowley* v. *Pulsifer*, 137 Mass. 392. In that case there had been no action by the court. Here the bill had been presented to the court,

and the court had acted upon it so far as to make a special order that the defendants therein should appear and show cause why they should not be enjoined. This act of the court was a judicial proceeding and, whatever might formerly have been the rule, it was a subject for a privileged report, although the cause had not yet been finished. It was an act begun in a case, and in the end there must be a final decision. The words of Esher, M. R., in *Kimber* v. *Press Association*, L. R. [1893] 1 Q. B. 65, 71, seem to us to be a true statement of the law on this subject: " I am, therefore, of opinion that where the proceedings are such as will result in a final decision being given, a fair and accurate report, made *bona fide*, of those proceedings is privileged, although it be published before the final decision." And in that case the rule was applied to the proceedings upon an *ex parte* application for the issue of a summons on a charge of perjury. If this were not so then in the language of Lord Esher, " The ridiculous result would follow that, where the trial of a case of the greatest public interest lasted fifty days, no report could be published until the case was ended." *Kimber* v. *Press Association*, L. R. [1893] 1 Q. B. 65, 71, and cases cited. *Metcalf* v. *Times Publishing Co.* 20 R. I. 674, and cases cited. *McBee* v. *Fulton*, 47 Md. 403. *Ackerman* v. *Jones*, 37 N. Y. Sup. Ct. 42. *Stuart* v. *Press Publishing Co.* 83 App. Div. (N. Y.) 467. See also the instructive case of *Usill* v. *Hales*, 3 C. P. D. 319, for a general discussion of the law upon this matter.

The articles in question contained among others the following statements : " At the office of C. Henry Kimball, 97 Haverhill Street, officers, stockholders and lawyers interested in the Burrows Lighting & Heating Company met this morning. The affairs of the Burrows Lighting & Heating Company have been before the public for a considerable time and are apparently in a badly tangled condition. An order of notice was recently issued by the Superior Court against C. Henry Kimball, William Galletly and the Burrows Lighting & Heating Company, ordering them to appear in court on Thursday of this week to show cause why they should not be restrained from holding any meeting. The charges were that the holders of a majority of the capital stock of the company had fraudulently secured control over 416,000 shares of stock."

By an inspection of the bill in equity and of the order of the court it appears that the statement in the articles was a fair report of the court proceedings. And we are further of opinion that the ruling that the evidence did not warrant a finding of malice was correct. So far, therefore, as the plaintiff attempted to hold the defendants as to so much of the articles as related to the proceedings in court they failed to make out a case.

But there was something more in the articles than the report of the proceedings in court. There was a report of the meeting of the stockholders of a private corporation; and unless this part of the report is also privileged the defense, so far as resting upon that ground, must fail. It is argued by the defendants that " the public is interested and concerned in a meeting of stockholders of a corporation such as is described in the " articles in question, and that reports of such meetings are privileged if fair and made without malice. But the difficulty with this argument is that unless modified by statutory provision the law in England and in this Commonwealth always has been otherwise. It is to be noted that we are not dealing with what is said at the meeting nor with the person who said it. No doubt a stockholder at such a meeting, speaking to stockholders, may with impunity say things derogatory to an officer or the manager of the company provided that what he says be pertinent to the matter in hand and he speaks in good faith and without malice. His justification rests upon the fact that he is speaking to the stockholders upon a subject in which he and they have an interest.

On the contrary we are dealing with a report in the nature of a repetition of the defamatory remarks, which report is made by a stranger, having no interest in the question, to other strangers, called the public, equally without interest. It is manifest that the grounds for the privilege under which the original speaker, the stockholder, is protected cannot serve the publisher of the report. *Davison* v. *Duncan,* 7 El. & Bl. 229. *De Crespigny* v. *Wellesley,* 5 Bing. 392. The privilege of the publisher, if any he has, must rest upon other grounds.

It is stated by some authorities that by the common law of England reports of judicial and parliamentary proceedings alone were privileged. While it is said by Shaw, C. J., in *Barrows* v.

*Bell,* 7 Gray, 301, that this statement, unqualified, is too broad, still subsequent decisions seem to show clearly that in England the principle of privilege is confined to reports of judicial or *quasi* judicial bodies. No privilege was attached to the report of other public unofficial meetings. Hence, if in such a case a report containing any defamatory statement of fact was printed in a newspaper the proprietor's only defense was that the statement was true. *Purcell* v. *Sowler,* 1 C. P. D. 781; 2 C. P. D. 215. See also Odgers, Libel & Slander, (4th ed.) Appendix B, and the authorities therein cited. Since the decision in this last case the law has been somewhat modified so far as respects official and other public meetings. But these statutes have been somewhat strictly construed, and even now a fair report is not always safe. *Ponsford* v. *Financial Times,* 16 T. L. R. 248.

The subject was quite freely discussed by Shaw, C. J., in *Barrows* v. *Bell, ubi supra,* and the following language was used (p. 313): " Whatever may be the rule as adopted and practised on in England, we think that a somewhat larger liberty may be claimed in this country and in this Commonwealth, both for the proceedings before all public bodies, and for the publication of those proceedings for the necessary information of the people. So many municipal, parochial and other public corporations, and so many large voluntary associations formed for almost every lawful purpose of benevolence, business or interest, are constantly holding meetings, in their nature public, and so usual is it that their proceedings are published for general use and information, that the law, to adapt itself to this necessary condition of society, must of necessity admit of these public proceedings, and a just and proper publication of them, as far as it can be done consistently with private rights. This view of the law of libel in Massachusetts is recognized, and to some extent sanctioned, by the case of *Commonwealth* v. *Clap,* 4 Mass. 163, and many other cases." And it was held that the publication by a member of the Massachusetts Medical Society of a true account of the proceedings of that society in the expulsion of another member for a cause within its jurisdiction, and of the result of certain suits subsequently brought by him against the society and its members on account of such expulsion, is privileged.

The above language of the court, however liberal its construc-

tion, is not to be understood as applying to strictly private meetings. It applies at the most only to meetings public in their nature, or where the proceedings concern the public. In that case it was said that the charter of the Massachusetts Medical Society "invested the society, their members and licentiates, with large powers and' privileges, in regulating the important public interest of the practice of medicine and surgery, enabled them to prescribe a course of studies, to examine candidates in regard to their qualifications for practice, and give letters testimonial to those who might be found duly qualified." It was also stated that it appeared by the acts incorporating this society that it was regarded by the Legislature " as a public institution, by the action of which the public would be deeply affected in one of its important public interests, the health of the people." It was further said that the proceedings of which the report was made " might be rightly characterized, as in the case of *Farnsworth* v. *Storrs*, [5 Cush. 412] as *quasi* judicial." And it was upon the latter ground that the communication was adjudged to be privileged.

The case before us is entirely different. The meeting was simply that of a private corporation invested with no privileges and owing no special duties to the public. It was an ordinary business meeting. Whether any member was in fraudulent possession of stock, or had mismanaged the affairs of the corporation, or whether the plaintiffs were unfit to continue as officers, or the corporation had been made bankrupt, were matters with which the public were in no way concerned. The meeting was for the stockholders alone. Only they or their duly constituted agents were entitled to be present. The meeting was neither public nor for a public purpose. As well might it be said that a private conference between the members of a partnership on partnership matters was a public meeting. For the purposes of the meeting it might have been necessary for charges to be made by one stockholder against another stockholder or an officer, and that the charges should be discussed and their truth or falsity determined; and so far the actors were well within the privilege. They had a duty to perform in a matter in which all were interested. But for obvious reasons hereinbefore stated the mantle of protection cannot cover him who, having no interest, repeats

the defamatory words to others also without interest. And in this matter the conductor of a newspaper stands no better than any other person. As was said in *Sheckell* v. *Jackson*, 10 Cush. 25, 26, 27, in reply to a contention that conductors of the public press are entitled to peculiar indulgence and have especial rights and privileges, " the law recognizes no such peculiar rights, privileges, or claims to indulgence. They have no rights but such as are common to all. They have just the same rights that the rest of the community have, and no more." These words, although spoken more than half a century ago, state the law as it exists to-day, except so far as it has been modified by statute, and there has been no statute material to the question before us. The result is that the articles were not privileged so far as they reported the proceedings of the corporation.

It is argued by the defendants that inasmuch as the charge in the bill in equity was the same as that made at the meeting, namely, that the majority of the stock was in the fraudulent possession of the plaintiffs, it will be impossible for the plaintiffs to contend that any alleged damage was suffered from the one rather than from the other, and therefore if one report is privileged the action cannot be maintained. This is untenable. Even if the charge in substance is the same, it is evident that a charge made in a bill in equity filed in court may not be regarded as so serious a matter as a charge made by one's business associates in a business meeting. The difficulty of separating the damages gives no immunity to the defendants.

*Exceptions sustained.*