WILLIAM A. SWEET *vs.* POST PUBLISHING COMPANY.

Norfolk. March 6, 1913. — September 11, 1913.

Present: RUGG, C. J., MORTON, HAMMOND, SHELDON, & DE COURCY, JJ.

*Libel and Slander,* Privileged communications, Damages. *Damages,* In tort. *Attorney at Law.*

In order that a report in a newspaper of an indictment found by a grand jury should constitute a privileged communication, for which the publisher cannot be held liable in an action of tort for libel, such report not only must be fair and impartial but also must be accurate.

In an action of tort, by an attorney at law against the publisher of a newspaper,

for an alleged libel in publishing an article purporting to give the names of six persons indicted by a grand jury and afterwards arrested for conspiracy to defraud persons unknown, naming the plaintiff as one of the persons indicted and arrested and further describing the plaintiff as to his age, residence and profession, it is no defense that the defendant by an honest mistake referred to and described the plaintiff instead of another person of a similar name, that the defendant exercised reasonable care and diligence in trying to ascertain the facts before publishing the report and that the mistake occurred in spite of such care and diligence. Whether evidence of such care and diligence would be admissible in mitigation of damages was not considered.

In an action of tort, by an attorney at law against the publisher of a newspaper, for an alleged libel in publishing an article purporting to give the names of six persons indicted by a grand jury and afterwards arrested for conspiracy to defraud persons unknown, falsely naming the plaintiff as one of the persons indicted and arrested and identifying him by description, the plaintiff, if he prevails, may recover damages, under appropriate allegations in his declaration, for mental suffering and distress, for illness suffered by him in consequence of the libel, for loss of reputation in his profession and for loss of business.

MORTON, J. This is an action of tort to recover damages for the publication of an alleged libel upon the plaintiff, an attorney at law, in the "Boston Post" of August 13, 1907, a newspaper published by the defendant. The article complained of purported to give the names of six persons, who had been indicted by the Suffolk County grand jury for conspiracy to defraud persons unknown, and circumstances connected with their arrest. Amongst the names given as those of the persons indicted and arrested was that of the plaintiff. There was also a paragraph in the same article giving particulars as to the age, residence and profession of "Mr. Sweet," which was descriptive of the plaintiff in the particulars mentioned. The article was printed in what may be fairly described as a highly sensational manner. The declaration was in three counts. The first count was in the statutory form. The second and third counts averred that the plaintiff was an attorney at law and that the alleged libel had greatly injured him in his reputation and had caused him great loss and damage in his profession. The answer admitted publication but denied any malice, and set up in substance that the article was published with reasonable care, on a privileged occasion, about another person whose name was similar to that of the plaintiff, but that in spite of such care a mistake occurred and that on discovering the mistake the defendant promptly published a retraction.

There was a verdict for the plaintiff and the case is here on ex-

ceptions by the defendant to a matter of evidence and to the refusal of the presiding judge * to give certain rulings asked for and to certain instructions that were given.

It was stated at the trial by the plaintiff's attorney that no claim of express malice was made.

The principal contention of the defendant is that the occasion was one of privilege or qualified privilege, and that it is not liable for the consequences of a mistake honestly made in a *bona fide* attempt, in the exercise of reasonable care and diligence, to get at the facts for publication.

The investigation and report by the grand jury constituted a judicial proceeding, and, in the absence of express malice, a fair and correct report of it by the defendant in the newspaper published by it was privileged. *Cowley* v. *Pulsifer,* 137 Mass. 392. *Kimball* v. *Post Publishing Co.* 199 Mass. 248. The privilege attaching to such a report rests, however, upon a somewhat different ground from that on which privileged communications between private persons rest. In them the person making the communication has an interest to protect or a duty to perform, or his relation to the party to whom the communication is made is of a confidential nature, and the law holds that in such cases, if what is said or written is communicated in good faith, in the belief that it is true, and with no malevolent motive and for the purpose of protecting or promoting his interest, or in the performance of a duty incumbent upon him social or legal or moral, and is justified or required by the nature of the relations existing between him and the person to whom the communication is made, and does not go beyond what is fairly warranted by the occasion, the communication is privileged. But no duty rests upon the publishers of a newspaper to report judicial proceedings, and their interest in such matters is only that which all the rest of the community has. It is for the interest of every one that crime should be detected and punished, and every one has the highest interest in whatever pertains to the proper administration of justice. It is upon these grounds that reports of judicial proceedings fairly and correctly made are privileged. *Cowley* v. *Pulsifer,* 137 Mass. 392. *Kimball* v. *Post Publishing Co.* 199 Mass. 248. *Kimber* v.

---

* *Stevens,* J.

*Press Association,* [1893] 1 Q. B. 65. In order to be privileged such reports must be not only fair and impartial, but they also must be accurate. The same principle which requires that they should be fair and impartial requires that they should be accurate, at least in regard to all material matters. *Kimber* v. *Press Association, supra.* A distorted report cannot in the nature of things form the basis for a correct judgment. In a sense it may make no difference to the public so far as the course of judicial proceedings is concerned, whether it is John Smith or John Jones who is arrested. But the administration of justice would be a farce or worse than a farce if the guilty escaped and the innocent were punished, or if the rights of parties were determined in a manner in which according to plain principles of justice they should not be. It is of the highest consequence therefore, in order to enable the public to judge rightly, that a report of judicial proceedings should be not only fair and impartial but should be accurate also. The importance of a full and correct statement in regard to legal matters is well illustrated in actions for malicious prosecution where the defense relied on is that in procuring the arrest the defendant acted upon the advice of counsel. See *Black* v. *Buckingham,* 174 Mass. 102. If the report had to be accurate, then the defendant is not protected by the alleged privilege. For, admittedly, the plaintiff was not the person indicted. Nor can the defendant avail itself of the doctrine laid down in *Hanson* v. *Globe Newspaper Co.* 159 Mass. 293, that in order to render a defendant liable the libel must have been published of and concerning the plaintiff, and it is not to be deemed to have been so published if through mistake another person than the one intended is named. It was in effect conceded at the trial that the plaintiff was the person meant although the naming of him was due to a mistake, and the presiding judge so stated in his charge without any objection being made thereto.

The defendant contends, however, that it is not liable and is entitled to avail itself of the privilege extended to fair, impartial and accurate reports of judicial proceedings if it exercised reasonable care and diligence in endeavoring to ascertain what the facts were before it published the report, and the mistake occurred in spite of such care and diligence and was an honest mistake. It would seem that that defense was disposed of, so far at least as this Com-

monwealth is concerned, by the case of *Burt* v. *Advertiser News-paper Co.* 154 Mass. 238, where it was held that the privilege did not extend to statements made with reasonable cause to believe them to be true. As was said in that case, "A person publishes libellous matter at his peril." A newspaper as a purveyor of news and information of interest to the public stands no differently in respect to liability from any other medium of communication. As was said by Coleridge, J., in *Davison* v. *Duncan*, 7 El. & Bl. 229: "There is no difference in law whether the publication is by the proprietor of a newspaper or by some one else. There is no legal duty on either to publish what is injurious to another; and, if any person does do so, he must defend himself on some legal ground." St. 1901, c. 322, providing that in actions for libel or slander the defendant may show acts of the plaintiff creating reasonable suspicion of the truth of the matters charged, manifestly has no application to this case. No doubt when a person acts in the performance of a duty or in regard to a matter where his interest is involved, he may justify by showing that he had reasonable and probable cause to believe what he published and that he acted *bona fide* and in the belief that what he published was true. In such a case he will be protected by the privilege which attaches to what he publishes from the consequences of an honest mistake. It is on that ground that the case of *Douglass* v. *Daisley*, 114 Fed. Rep. 628, rests, as we understand it. In the present case, however great the interest of the public in the doings of the grand jury might have been, there was, as already observed, no duty legal or social or moral resting upon the defendant to publish a report of them, and it had no such legal interest to be protected or promoted as to justify it in the publication of what otherwise would be a libel. It does not follow that because the public had an interest in knowing what the grand jury did that it was the defendant's duty to inform them. In *O'Connell* v. *Boston Herald Co.* 129 Fed. Rep. 839, also relied on by the defendant, the question was whether in a report of judicial proceedings published in a newspaper, the reporter, for the purpose of showing that the report was accurate, could introduce the opinion of this court that was rendered in *O'Connell* v. *Dow*, 182 Mass. 541, from which the statement, or one of the statements that were objected to was taken. It would seem clear that the opinion was admissible as

the court held that it was. See *Hood* v. *Hood*, 110 Mass. 463; also *Mangena* v. *Wright*, [1909] 2 K. B. 958, 977. In *Briggs* v. *Garrett*, 111 Penn. St. 404, also relied on by the defendant, and followed in *Conroy* v. *Pittsburgh Times*, 139 Penn. St. 334, and *Ferber* v. *Gazette & Bulletin Publishing Association*, 212 Penn. St. 367, there was a vigorous dissenting opinion by the Chief Justice and two associate justices which commends itself to us as expressing the correct view. There is no doubt that when required to do so private interests must yield to the public advantage. And if we go back over a long term of years, especially in England (see *Allbutt* v. *General Council of Medical Education & Registration*, 23 Q. B. D. 400; *Wason* v. *Walter*, L. R. 4 Q. B. 73) an increasing disposition is manifested to enlarge the protection afforded by privilege by broadening the field as to matters that may be properly published for the public information. A liberal rule in regard to such publications has long prevailed in this Commonwealth. See *Barrows* v. *Bell*, 7 Gray, 301, 313. But the right of the private citizen to be secure in his reputation always must remain one of the most sacred of rights. We discover no error in the manner in which the presiding judge dealt with the matter of privilege and liability in his charge, or in the way in which he dealt with the requests for rulings so far as they related to or bore upon that matter.

It follows from what has been said that the evidence which was offered of the examination of the city directory by the night city editor "as bearing upon the care which we took in and about the publication of this article" was rightly excluded. Whether it would have been admissible on the question of damages it is not necessary to consider. The purpose for which it was offered was limited to that expressed above, and the ruling was based on its competency for that purpose.

We do not discover any error in the manner in which the presiding judge dealt with the question of damages. The second count alleged that the plaintiff was an attorney and counsellor at law, engaged in the practice of his profession in Hyde Park and in the city of Boston, and particularly in the counties of Suffolk, Norfolk and Middlesex, and that by reason of the publication of said article he had suffered great pecuniary damages and loss of business and had been greatly injured in his feelings and in his

reputation in his profession. The third count alleged that the plaintiff was an attorney and counsellor at law engaged in the practice of his profession in the city of Boston, Hyde Park and other places in this Commonwealth, and that the publication of said libel and the matters and things contained in said article had caused him great loss in his professional business, greatly injured his feelings and his reputation in his profession, had deprived him of professional business, had caused the withdrawal of professional business from him and had put him to great trouble and. expense to refute said charges. Neither count was demurred to.

Under these counts the plaintiff was entitled to recover for mental suffering and distress and for illness suffered by him in consequence of the libel, for loss of reputation in his profession, and for loss and withdrawal of business. It is immaterial, it seems to us, whether the damages which the plaintiff was entitled to recover be called general or special. So far as there was any evidence tending to show particular instances of damage it was brought out by the defendant itself without objection on cross-examination of the plaintiff. The case is fully covered we think on this branch of it by *Parker* v. *Republican Co.* 181 Mass. 392, and *Morasse* v. *Brochu,* 151 Mass. 567.

*Exceptions overruled.*

*J. T. Pugh,* for the defendant.
*C. R. Elder,* for the plaintiff.