**Orlando CEPEDA, Appellant,**

v.

**COWLES MAGAZINES AND BROADCASTING, INC., a corporation, Appellee.**

**No. 21560.**

United States Court of Appeals Ninth Circuit.

April 2, 1968.

---

**418**

Marvin E. Lewis (argued), George Olshausen, of Lewis & Stein, San Francisco, Cal., for appellant.

Charles W. Kenady (argued), Richard L. Noble of Cooper, White & Cooper, San Francisco, Cal., for appellee.

Before MADDEN, Judge of the United States Court of Claims, and CHAMBERS and JERTBERG, Circuit Judges.

MADDEN, Judge:

In New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, the Supreme Court in 1964 made a wide breach in what had previously been the law of libel. Twelve years earlier, in Beauharnais v. People of State of Illinois, 343 U.S. 250, 72 S.Ct. 725, 96 L.Ed. 919, Justice Frankfurter had said, for the Court, "Libelous utterances not being within the area of constitutionally protected speech, it is unnecessary either for us or for the State courts to consider the issues behind the phrase 'clear and present danger.' Certainly no one would contend that obscene speech, for example, may be punished only upon a showing of such circumstances. Libel, as we have seen, is in the same class."

In New York Times, persons who libelled public officials were granted a far-reaching immunity from civil actions. Three of the justices would have made that immunity complete and unconditional. In Garrison v. State of Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125, the Court applied the same immunity to criminal prosecutions for libel.

In 1964 this court in Cepeda v. Cowles Magazine etc., 9 Cir., 328 F.2d 869, cert. den. 379 U.S. 844, 85 S.Ct. 51, 13 L.Ed. 2d 50, held that the complaint stated an enforceable claim for libel on the suit of a famous baseball player against a national magazine.

In Curtis Publishing Company v. Butts and Associated Press v. Walker,

decided together, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094, the Court, in 1967, faced the question whether the New York Times doctrine granting broad immunity to those sued for having libelled public officials applied, in its full breadth, to persons sued for the libel of "public figures" who are not public officials. "Public figures" are those persons who, though not public officials, are "involved in issues in which the public has a justified and important interest." Such figures are, of course, numerous and include artists, athletes, business people, dilettantes, anyone who is famous or infamous because of who he is or what he has done. Orlando Cepeda, the principal character in the instant suit, was and is a "public figure." His fame as an extraordinary baseball player is recited in our former opinion, cited above.

In Butts' case, cited above, the Curtis Company, in its magazine the Saturday Evening Post, had charged Butts, a college football coach, with having disclosed the secret plays of his team to the coach of another team against which Butts' team was to play soon thereafter. In Butts' suit against the publisher, he obtained a large judgment. The case was reviewed in the Supreme Court. There was no opinion in which a majority of the Justices were willing to join. Mr. Justice Harlan, speaking for four justices, said that the constitutional protection of speech and press required that the activities of "public figures" "cannot be left entirely to state libel laws unlimited by any overriding constitutional safeguard," but that "the rigorous federal requirements of New York Times are not the only appropriate accommodation of the conflicting interests at stake" and must not be given "an unintended inexorability at the threshold of this new constitutional development." Justice Harlan then said, for his group of four justices:

> We consider and would hold that a "public figure" who is not a public official may also [1] recover damages for

a defamatory falsehood whose substance makes substantial danger to reputation apparent, on a showing of highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers.

In Butts, Chief Justice Warren concurred in affirming the judgment for Butts. But he expressly and emphatically repudiated any distinction between public officials and "public figures," and would have applied to both the strict standards of New York Times, that is, that there can be no recovery except upon proof of actual malice, which could include "wanton or reckless indifference or culpable negligence with regard to the rights of others," as well as "ill will, spite, hatred and an intent to injure one." Although the trial court, in the trial which had taken place before the New York Times decision came down, had not instructed the jury as New York Times would have required, yet, because the evidence of "reckless disregard" etc. was clear, and for other practical reasons, the Chief Justice was not willing to subject the plaintiff to a new trial, and hence he joined in affirming Butts' recovery.

Justices Brennan and White agreed with the Chief Justice that there should not be any distinction between the rights of "public figures" and public officials, but, unlike the Chief Justice, they would have reversed the judgment for Butts so that the case could be retried with proper instructions to the jury.

In Butts, Justices Black and Douglas would have reversed the judgment for Butts, on the ground consistently held by them "that the First Amendment was intended to leave the press free from the harassment of libel judgments."

To properly assess the attitude of the Supreme Court toward suits by "public figures" for libel, one must remember that two justices would not, in any circumstances, allow recovery, and three

---

1. "Also," as here used, means, in addition to the "actual malice" situation in which even a public official might recover damages.

other justices would allow recovery only upon proof of "actual malice," defined as Chief Justice Warren defined it above, repeating the definition given in New York Times, 376 U.S. 254, 279, 84 S.Ct. 710, 11 L.Ed.2d 686. In Butts, the Court was treating of false statements of fact, not of opinion, expert or otherwise. The same was true in New York Times. Only three of the present justices voted in the Butts case to apply the test, relatively liberal in the direction of recovery, formulated by Justice Harlan and quoted above—a "showing of highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers." If a plaintiff could prove that fact, he would have a good chance of getting three votes in the Supreme Court and a chance of a fourth vote, depending upon the position taken by Mr. Justice Marshall, who has, since Butts, succeeded to the place of Mr. Justice Clark, retired.

When Cepeda's case was before this court in 1964, we held that his complaint, which quoted pertinent parts of the article in Look Magazine which he alleged to be libelous, stated a cause of action, and required the magazine to go to trial on the issue of the truth of its statements as to the opinion of Cepeda's employer, the San Francisco Giants baseball club, as to Cepeda's competence and value as a team baseball player in a star capacity. The suit being in the federal court in California only for the reason of diversity of citizenship, we relied upon and discussed California statutes and decisions which, in our opinion, embodied the law of libel applicable to this case. The case of Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094, referred to frequently hereinabove, changed all that. New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, had, in 1964, preempted the law of libel as it related to public officials, making the outcome of such a suit dependent not upon state constitutions, statutes, and decisions, but upon the First Amendment to the Constitution of the United States and its interpretation by the Supreme Court. The Butts case in 1967 similarly preempted the law of libel as it applied to "public figures." As we have seen, Justice Harlan, for his group of four justices, said that the applicable law "cannot be left entirely to state libel laws unlimited by any overriding constitutional safeguard." The only difference between the Harlan group of four and the other five was that the latter would have drawn the federal constitutional limitations even more tightly than the Harlan four to prevent recovery by a "public figure."

When the case was sent down from this court for trial in the district court, the normal situation would have been that the "law of the case" announced by this court would have been, whether right or wrong, the law applicable to the trial in the district court. The district court wisely recognized that a higher law, that of the Supreme Court of the United States, had intervened after our decision and that the trial, if it was not to be a futility, must necessarily be had upon the basis of that higher law.

■■ In the trial, the parties were given full opportunity to present evidence on the issues which were open to them under the New York Times and the Butts decisions. Because of the Supreme Court's protective attitude toward freedom of the press, the burden of proof was rightly placed upon Cepeda to prove, if he could, actual malice as defined in New York Times, or extreme departure from the standards of investigation and reporting, the test proposed by Justice Harlan's group in Butts. The trial was lengthy and the evidence voluminous, ably presented and relevant to the issues. The court instructed the jury three times on the subject of actual malice, including in that term wanton recklessness and heedlessness of the plaintiff's rights. It also included in the concept of malice reckless or heedless failure to check sources of information, or such failure to check, for the purpose of avoiding finding of the truth. This latter instruction would seem to come

within the New York Times definition of malice, and therefore be proper. The proposed Harlan test of an extreme departure from ordinary standards of investigation and reporting as a ground for allowing recovery was not and should not have been made the subject of an instruction, since that test had been rejected by a majority of the Supreme Court in Butts.

 The Butts decision cast important obstacles in Cepeda's path. The jury found that he had not overcome those obstacles. The verdict was supported by the evidence, and we affirm the judgment which was entered on the verdict.