EDWARD M. JOYCE *vs.* GLOBE NEWSPAPER COMPANY.

Suffolk. January 8, 1969. — March 12, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, SPIEGEL, & REARDON, JJ.

*Libel and Slander. Law or Fact. Evidence*, Relevancy and materiality, Judicial discretion. *Practice, Civil*, Ordering verdict. *Words*, "Committed."

There was no error in the direction of a verdict for the defendant at the trial of an action for libel against a newspaper for publication of an article respecting judicial proceedings in which the plaintiff won substantial damages against a doctor who had had him "committed" to a State hospital for ten days "after adjudging him mentally deranged," where it appeared that the plaintiff had been admitted to the hospital against his will pursuant to a request to its superintendent from the doctor under G. L. c. 123, § 79, on a form for use under that section, that the article was accurate and a fair report of the proceedings, and that, no actual malice being shown, the article

was privileged; there was no merit in a contention of the plaintiff that by the use of the word "committed" in the article the defendant falsely stated that the plaintiff had been confined by judicial process, or in a further contention by him that the defendant admitted a misleading use of the word "commitment" in a retraction published, which pointed out the difference between an involuntary admission to an institution at the request of a doctor and a "formal judicial commitment," and recited that the defendant "did not intend to state that . . . [the plaintiff] had been judicially committed" and that "to the extent that . . . readers inferred . . . [that the plaintiff] had been judicially committed . . . [the defendant retracted] its statement." [494, 498]

At the trial of an action for libel against a newspaper for publication of an article respecting judicial proceedings in which the plaintiff recovered substantial damages against a doctor, there was no prejudice to the plaintiff or abuse of discretion in excluding testimony proffered by him as to his recollection of his testimony and of the doctor's testimony in the proceedings. [497–498]

The overruling of a demurrer to the declaration of an action for libel did not bar the direction of a verdict for the defendant at the close of the evidence. [498]

In an action for libel against a newspaper for publication of an article respecting judicial proceedings, whether the occasion was privileged was a matter of law, and malice, accuracy, and fair reporting were matters of fact. [498–499]

TORT. Writ in the Municipal Court of the Dorchester District dated February 17, 1964.

Upon removal to the Superior Court, the action was tried before *Lurie*, J.

*Edward M. Joyce*, pro se.

*Robert J. Hallisey* (*Gary A. Spiess* with him) for the defendant.

WHITTEMORE, J. This is an action of tort for libel. The publication on or about November 26, 1963, of the news item set out in the margin[1] was admitted. The first

---

[1] "$5000 Given Lawyer Who Was Committed

Dedham — A Quincy attorney won $5000.00 damages in Norfolk County Superior Court Wednesday against a physician who had had him committed to Medfield State Hospital for 10 days after adjudging him 'mentally deranged.' Atty. Edward M. Joyce of 36 Bromfield St., Wollaston sued Dr. William M. MacPhee of Whitney Rd., Quincy for $75,000. Joyce who acted as his own attorney, argued that the doctor had confined him involuntarily and that he had suffered damages in the process. Dr. MacPhee was defended by Atty. Robert Daley. On Nov. 11, 1961, Dr. MacPhee stated he was called to the Quincy Police Station where he observed Joyce, who was belligerent after being removed from his home by authorities. He then had him committed."

count alleged that the publication was false and malicious with intent to injure. The second count alleged that the defendant (Globe) intended "to impute . . . that the plaintiff was committed by judicial process to the Medfield State Hospital; . . . that the plaintiff was judicially removed from his home; that the plaintiff was insane and mentally deranged; that the plaintiff acted improperly at the trial . . . ." The third count alleged that the publication was with the intention of injuring the plaintiff in his business. The defendant before answer published a retraction.[2] The answer, inter alia, averred truth and privilege and set up the retraction. The plaintiff excepted to the action of the judge in directing a verdict at the close of the evidence.

The plaintiff's primary contention is that, in accordance with the allegation of the second count, by the use of the word "committed" the defendant in effect stated that there had been a court proceeding in which a judge had made an adjudication and that this was false. We disagree. The evidence showed that the plaintiff had been admitted to the hospital against his will pursuant to a request to its superintendent from Dr. MacPhee under G. L. c. 123, § 79, and on a form for use under that section which, incorporating the words of the statute, recited that the plaintiff "in my opinion is in need of immediate care and treatment because of mental derangement other than drunkenness." In *Joyce* v. *George W. Prescott Publishing Co.* 348 Mass. 790, this court held that the word "commitment" as used in another newspaper article about the same

---

[2] "Retraction

The Globe has been sued for libel by Edward M. Joyce, a Quincy lawyer. Mr. Joyce was involuntarily admitted to Medfield State Hospital for 10 days in 1961. Thereafter he brought suit and recovered judgment against the doctor who signed the request for admission for malpractice and for depriving him of his liberty. In reporting the recovery of judgment by Mr. Joyce, the Globe stated on Nov. 27 and 28, 1963, that he had been committed for 10 days, rather than admitted for 10 days. Involuntary admission upon the request of a doctor is a statutory procedure which differs from formal judicial commitment to an institution. The Globe did not intend to state that Mr. Joyce had been judicially committed, and to the extent that its readers inferred from its statement that Mr. Joyce had been judicially committed it retracts its statement."

involuntary confinement implied no more than "placing in the hospital pursuant to proceedings provided by law." However, as the plaintiff contends that that holding is wrong and contrary to *Mezullo* v. *Maletz*, 331 Mass. 233, 234, cited in the *Prescott* case, we have again carefully considered the meaning of the words "commitment" and "committed" and their implications.

Our conclusion is that the *Prescott* holding was directly indicated in prior decisions, and in general usage, and was fully consistent with the *Mezullo* case. In that case the word "committed" as used in a declaration was construed on demurrer. The court noted that §§ 51 and 77 of c. 123 relate to "commitment" and are so entitled in contrast to §§ 78 and 79 which do not use the word. Both §§ 51 and 77 specify an order by a judge. The court said: "With these statutes as a background to the allegations in the declaration we are of opinion that the plaintiff was referring to a *commitment of the sort* mentioned in §§ 51 or 77, or both, and that a judicial proceeding with an order of commitment preceded the plaintiff's confinement in the State Hospital" (emphasis supplied). It of course does not follow from this determination of the import of the word in a particular formal declaration, construed in the light of statutes known to the pleader and the court, that mankind in general would so understand the word in different context.

The court in the language of the *Mezullo* case just quoted impliedly recognized that commitment may be of a sort other than commitment by order of a judge under § 51 or § 77. This recognition was express in *Karjavainen* v. *Buswell*, 289 Mass. 419, 426, 428. At p. 426, in referring to confinement under § 79, the court said: "Section 79 provides with particularity how *such commitment* shall be made" (emphasis supplied). This sentence, as a part of a long quotation from the *Karjavainen* case, was quoted by the court in 1962 in *Belger* v. *Arnot*, 344 Mass. 679, 684–685. We see nothing in the holding of that case, cited by the plaintiff, that suggests a contrary construction. The

action was in tort for assault and negligent diagnosis and treatment. The holding of that case was that the evidence warranted a finding that the plaintiff was in need of immediate care and treatment for mental derangement and that the defendant, in acting under § 79, acted in good faith and without negligence and that his action was privileged. Other illustrations of the use of the word commitment to describe proceedings under § 79 are noted in the *Prescott* opinion, *supra* (348 Mass. 790). One of the dictionary definitions of "commitment" is "confinement to a mental institution or hospital." The use of the word in a newspaper account plainly says that someone had exercised or purported to exercise *power given by law* to restrain the liberty of another. It does not, without more, say that the exercise of that power was by a judge.

The plaintiff's brief appears, by implication at least, to recognize that the "common everyday use of the word 'commitment'" is relevant. This is in the course of his argument that the word is inapplicable to refer to acts by the physician in connection with entirely unjustified police conduct.[3] This contention cannot prevail in the circumstance that the case against the physician was based on his exercise of the power given him by § 79, thus making possible the involuntary transportation of the plaintiff to the hospital by the police and his subsequent confinement there.

There is nothing in the Globe account to suggest that a judge had acted to bring about the involuntary confinement of the plaintiff. On the contrary it accurately reflected the evidence that it was the physician and not a judge who had acted. The purport of the article was that the physician had been found liable and the plaintiff vindicated because the former had acted wrongly. It reported that the physician had acted after "adjudging . . . [the plaintiff] 'mentally

---

[3] "[T]he common everyday use of the word 'commitment' by business, law, religion, military defense, and science is, and has always been a free voluntary act and never used to refer to an act of violence (dragging the plaintiff out of his home into an insane asylum at gun threat)."

deranged.'" It stated that it was the physician who "had
had him [the plaintiff] committed" and had "confined him
involuntarily."

The bill of exceptions shows that the truth of the material
statements of the article had been established without
contrary evidence. The bill states that the plaintiff testified
in the present action that the physician [at the 1963 trial of
the action against the physician] "did not state that [the]
plaintiff was belligerent." This must be read with excerpts
from the transcript of the testimony at the 1963 trial which
were in evidence. They show that the plaintiff in cross-ex-
amination of the physician had brought out that on March 5,
1962, the physician, in stating what he had observed at
the police station on November 11, 1961, had written:
"He [the plaintiff] was agitated and belligerent." Also the
physician had testified that what he observed was an "agi-
tated . . . violently disturbed mental state." We assume
the plaintiff in the first statement above referred to was
making a distinction between what the physician at the
trial stated he had written on March 5, 1962, and the words
he used at the trial to characterize what he saw. How-
ever that may be, the jury could not have found that the
article was materially inaccurate in reporting that the
physician had stated that "he observed Joyce who was
belligerent."[4]

Proffered testimony as to the plaintiff's recollection of
other testimony at the 1963 trial was excluded subject to his
exception. The offer of proof shows that most of the offer
was immaterial and as to all of it there was no prejudice and
the ruling was within sound discretion. That the plaintiff
had testified in detail as to how he had been wrongly seized
and confined by the police in the station and in the hospital
was confirmatory of the essence of the news item. What
the plaintiff recalled that the physician had said at the trial

---

[4] The statement in context had no adverse implications. The report in
effect was that a jury had found that a physician, who stated he had ob-
served the plaintiff as belligerent, had had him committed as deranged and
in so doing had acted wrongly to the plaintiff's damage.

would have neither shown nor suggested material falsity in the Globe's report.[5]

The plaintiff suggests that the retraction in effect admitted the misleading use of "commitment." We disagree. The retraction accurately stated that "[i]nvoluntary admission upon the request of a doctor is a statutory procedure which differs from formal judicial commitment." The retraction was "to the extent that . . . readers inferred . . . that Mr. Joyce had been judicially committed." It stated that "The Globe did not intend to state that Mr. Joyce had been judicially committed."

That a demurrer had been overruled did not bar the action of the trial judge in directing a verdict at the close of the evidence. The article was accurate and, in giving notice that the plaintiff had prevailed in his contention that what was done was wrong, it was a fair report. It was privileged, therefore, as a report of judicial proceedings in the absence of a showing of actual malice. *Kimball* v. *Post Publishing Co.* 199 Mass. 248, 249–250. *Thompson* v. *Globe Newspaper Co.* 279 Mass. 176, 189–192. *Perry* v. *E. Anthony & Sons, Inc.* 353 Mass. 112, 114. Compare *Whitcomb* v. *Hearst Corp.* 329 Mass. 193, 199–200. Whether the occasion was privileged was matter of law to be determined by the judge. *Sheehan* v. *Tobin*, 326 Mass. 185, 194 (there were other issues taking case to the jury). See, as to other privileged occasions, *Time Inc.* v. *Hill*, 385 U. S. 374, 387–391 (action for invasion of privacy under New York civil rights law); *Curtis Publishing Co.* v. *Butts*, 388 U. S. 130, 154–155 (applying the rule of *New York Times Co.* v. *Sullivan* [376 U. S. 254, 279–280] to "public figures").

The publication of this news item did not tend to show actual malice or intent to injure. No evidence whatever permitted such a conclusion.

As the cases show, malice, accuracy, and fair reporting

[5] He had talked to the police; had not examined the plaintiff; he vaguely remembered seeing him once in his life; the police told him that Mr. Joyce was paranoiac and violent; "that the statements that he made were false and untrue."

are questions of fact for the jury if there is a basis for divergent views.   The plaintiff suggests that unfairness could be found in the circumstance that the article gave further publicity to the events mentioned.   That overlooks that this was a report of judicial proceedings.   No basis was shown for concluding a deviation from usual policy in reporting such proceedings.[6]   The privilege of accurate and fair reporting of such public events as a jury verdict in a case duly tried is not to be weakened or in effect destroyed by submitting a resulting libel action to the jury on other insubstantial issues.   See the *Kimball* case, *supra* (199 Mass. at 251).   See also the *Perry* case, *supra*, and the *Prescott* case, *supra* (not a report of court proceedings but of a complaint instituting court proceedings filed by the plaintiff himself and ruled to be accurate).   Compare *Lundin* v. *Post Publishing Co.* 217 Mass. 213, 216–217.

Here was a fair and accurate report that told persons who may have heard of what had happened in 1961 that Mr. Joyce had established his vindication.   There was no substantial jury issue.

*Exceptions overruled.*

---

[6] That the plaintiff testified that he felt that the Globe had a policy not to publish an article about a mental institution and that this was the only one he had been able to find, plainly did not give a basis for such a conclusion.