ARTHUR P. LEWIS *vs.* GEORGE VALLIS
(and two companion cases[1]).

Suffolk.    December 5, 1969. — February 2, 1970.

Present: WILKINS, C.J., SPALDING, CUTTER, SPIEGEL, & QUIRICO, JJ.

*Libel and Slander.    "Public Figure."    Law or Fact.*

A false statement by the defendant in an action for slander, the owner of a garage and repair station, that the plaintiff had said that he was assistant to the Registrar of Motor Vehicles and had "made a threat . . . to take" away the defendant's automobile inspection license if the plaintiff should be forced to pay a bill for repairs to his automobile performed by the defendant was an actionable accusation of crime. [665]

Hearings by the registry of motor vehicles on the resumption of an automobile inspection license of the owner of a garage and repair station, and on the suspension of a license to operate an automobile, were judicial proceedings, and where a report of the proceedings by a newspaper was fair and substantially accurate and made without malice it was privileged and could not be ground for holding the newspaper liable for libel. [666–667]

One who had been an intermittent candidate for minor elective public office, a seeker of appointment to unimportant public office, a candidate for both branches of the General Court, and campaign manager for mayoral candidates was not a "public figure" within the law of libel, and a newspaper did not have that defence in an action for libel by him against it; and, without introducing evidence of actual malice, he was entitled to damages for a false statement accusing him of crime published by the defendant. [668, 669]

[1] The companion cases are by the same plaintiff (1) against Boston Herald-Traveler Corporation and (2) against the Globe Newspaper Company.

In an action for libel, whether the plaintiff was a "public figure" was a question of law. [668]

A verdict should have been ordered for the defendant in an action for libel against a newspaper based on its publication of a report of certain judicial proceedings where the only proper view of the publication was that it was fair and substantially accurate and there was no evidence of malice. [669]

THREE ACTIONS OF TORT. Two writs in the Superior Court dated December 13, 1963, and one dated March 13, 1964.

The actions were tried before *Goldberg,* J.

*Frederick G. Talabach,* for George Vallis, submitted a brief.

*Robert J. Hallisey* for the Globe Newspaper Company.

*Walter J. Hurley* for the Boston Herald-Traveler Corporation.

WILKINS, C.J. These actions of tort for defamation were tried together and resulted in verdicts for the plaintiff.[1] The declaration in the Vallis case is for slander. The declarations in the two actions against the newspapers are for libel.

## THE ACTION AGAINST VALLIS.

There are two counts, each of which alleges that the defendant on or about October 9, 1963, "falsely and maliciously spoke and published of the plaintiff the following words: 'It all started when this guy came in and we repaired his car. . . . He said he was the Registrar's Aide and refused to pay. When I told him to get up the money he said he'd have my sticker license taken away. Two days later it was.'" The first count alleges that the defendant accused the plaintiff of attempted larceny and impersonation of an official of the registry of motor vehicles; that the statements were untrue as the defendant well knew; and that as a result the plaintiff was damaged in reputation, was caused mental anguish, and suffered serious financial loss because of his inability to obtain employment or appointment to public office.

---

[1] Against Vallis, $10,000; against the Herald, $3,500, reduced to $2,000 by remittitur; against the Globe, $1,500, reduced to $1,000 by remittitur.

The second count alleges that he has been a good citizen respected and esteemed by other citizens; "that he is and has been a candidate for elective and appointive offices of great public honor and trust;" and that as a result the plaintiff incurred damage to his reputation and to his political profession, and sustained financial loss "because of his inability to obtain employment or appointment to a public office."

The case as it comes to us places us under a great handicap. The defendant filed, and had allowed, an outline bill of exceptions, so called, under S. J. C. Rule 1:22, 351 Mass. 742–745. It stated that the exception the defendant proposed to argue was the denial of his motion for a directed verdict; and it designated "all of the transcript of evidence, the Court's instructions to the jury and all of the exhibits, as necessary for such exception," even though, when reduced to its essentials, the defendant's contention is simply that the alleged defamation was not actionable per se. The plaintiff has not submitted a brief in any of the three cases. The defendant has made no oral argument and has submitted an inadequate brief, in which there is a failure to comply with S. J. C. Rule 1:15 (2), 351 Mass. 739, in that it makes statements of alleged fact without making a single appropriate reference to a page number of the transcript of evidence.

From this disordered mass we attempt to put together a statement of facts adequate to permit a discussion of the issues.

The defendant owned a garage and repair station, where he had been authorized to make periodic inspection of motor vehicles and to distribute windshield stickers, so called. G. L. c. 90, § 7A (as amended through St. 1967, c. 202, §§ 1, 2). In 1963 the defendant lost his right to inspect and was without stickers. Someone on his behalf asked the plaintiff to help the defendant out, and the plaintiff agreed to try.

About this time the parties engaged in controversy as to a bill of the defendant for repairs to the plaintiff's car. The

plaintiff, according to the defendant, stated that he was assistant to the registrar of motor vehicles and "made a threat he was going to take the inspection sticker from me" if he should be forced to pay the bill. The plaintiff denied making this statement. The defendant told representatives of the Herald and Globe of these alleged threats. The plaintiff did not hold a position with the registry. On October 11, 1963, there was a hearing at the registry, as a result of which the defendant was allowed to resume sticker inspections.

The issue, as stated in the defendant's brief, is whether "the words spoken by the defendant of the plaintiff, as alleged in the plaintiff's declaration, [are] slanderous and actionable, and did the . . . [judge] err in not allowing the defendant's motion for a directed verdict."

The first count alleges that the words charged the plaintiff with attempted larceny by seeking to obtain the repair of his car at no expense by pretending to be a registry aide and threatening to use influence to take away the defendant's "sticker license." We are of opinion that there was an accusation of crime which was actionable. *Grindall* v. *First Natl. Stores Inc.* 330 Mass. 557. See *Lynch* v. *Lyons,* 303 Mass. 116, 122. We need not decide whether the counts charge special damages, which would be another ground for recovery. See *Craig* v. *Proctor,* 229 Mass. 339, 341. Special damages are "damages which are the natural but not the necessary result of the alleged wrong." *Id.* 341.

There was a conflict in the testimony of the plaintiff and the defendant as to the truth of the alleged defamatory statement. The judge left this simple issue of fact to the jury, whose verdict settles this issue. The motion for a directed verdict was rightly denied.

*Exceptions overruled.*

## The Action Against the Boston Herald-Traveler Corporation.

This action seeks to recover for libellous publications on October 9 and 12, 1963. As above noted, Vallis called a reporter of the defendant and gave him a statement of his controversy with the plaintiff which was found defamatory and untrue by the verdict in the Vallis case. These allegations were substantially repeated in the two publications. The October 9 publication was basically a repetition of the statement made by Vallis. The October 12 publication was a report of a registry of motor vehicles hearing at which Vallis made the same charges.

Hearings on the suspension of Vallis's inspection station and of the plaintiff's right to operate an automobile took place on October 11, 1963. These were judicial proceedings to which the privilege of fair reporting applied. See *Barrows* v. *Bell*, 7 Gray, 301 (proceedings of medical association against quacks); *Thompson* v. *Globe Newspaper Co.* 279 Mass. 176, 186–187 (warrant issued in extradition proceedings); *Joyce* v. *Globe Newspaper Co.* 355 Mass. 492, 498, *Brown* v. *Globe Printing Co.* 213 Mo. 611, 634 (extradition proceedings). The report of judicial proceedings is privileged if it is fair and accurate and made without malice. The report must be accurate in fact and not merely made in good faith. *Sweet* v. *Post Publishing Co.* 215 Mass. 450, 454. Accuracy in this respect means substantially accurate and not distorted and need not be correct in every particular. *Thompson* v. *Boston Publishing Co.* 285 Mass. 344, 348–349.

Where a comparison of the article and the record of the reported proceeding shows that the article is substantially accurate and there is no evidence of malice, it is proper to direct a verdict for the defendant. *Kimball* v. *Post Publishing Co.* 199 Mass. 248. "[M]alice, accuracy, and fair reporting are questions of fact for the jury if there is a basis for divergent views." *Joyce* v. *Globe Newspaper Co.* 355 Mass. 492, 498–499.

There was no substantial distinction between the publications of October 9 and 12 so far as their contents are concerned. The declaration does not distinguish them. The October 12 publication, being after the hearing, has the defence of privilege of accurate reporting. There was no room for divergent views as to the substantial accuracy of the report or the existence of malice.

The October 9 publication, being before the hearing, has no such privilege.

Three questions are argued by the defendant. The first is whether the plaintiff, as matter of law, is a "public figure" as this phrase is applied in the law of libel. The second is whether the publication was motivated by malice as defined in *New York Times Co.* v. *Sullivan*, 376 U. S. 254.

The effect of the plaintiff in an action for libel being a public official was introduced in the case last cited. At pp. 279–280 it was said: "The constitutional guarantees require . . . a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice' — that is, with knowledge that it was false or with reckless disregard of whether it was false or not."

The doctrine is in the course of expansion, and already has been extended to cover a "public figure" in a number of Federal cases. *Curtis Publishing Co.* v. *Butts*, 388 U. S. 130 (State university athletic director) and *Associated Press* v. *Walker*, a companion case (prominent retired general taking part in effort to resist desegregation of the University of Mississippi) (compare opinion of Harlan, J. with that of Warren, C.J.). *Pauling* v. *Globe-Democrat Publishing Co.* 362 F. 2d 188 (8th Cir.), cert. den. 388 U. S. 909 (well known scientist actively seeking nuclear test ban treaty). *Cepeda* v. *Cowles Magazines & Bdcst. Inc.* 392 F. 2d 417 (9th Cir.), cert. den. 393 U. S. 840 (National League baseball player). *Thompson* v. *Evening Star Newspaper Co.* 394 F. 2d 774 (Ct. App. D. C.), cert. den. 393 U. S. 884 (leader of group supporting slate of officers for party primary). *Time, Inc.* v.

*McLaney,* 406 F. 2d 565 (5th Cir.), cert. den. sub nom. *McLaney* v. *Time, Inc.* 395 U. S. 922 (gambler involved in political campaign in another country). See Annotation, 19 A. L. R. 3d 1361.

The plaintiff was neither an elected nor appointed official in the sense discussed in the *New York Times Co.* case. In October, 1963, he was not even a candidate for public office, elective or appointive. He had been an intermittent candidate for minor elective public office, a seeker of appointment to unimportant public office, and campaign manager for a small minority candidate for mayor of Boston. In his declaration in the Vallis case he alleged that he had been injured in his "political profession." In 1960 he was candidate for representative in the General Court, finishing fifth in a field of twenty-one. In 1962 he was a candidate for State senator placing second in a field of nine. In 1963 he was the campaign manager for a mayoral candidate. In 1964 after the controversy with the defendant Vallis and the newspapers arose he again ran for the House of Representatives, finishing sixth among twenty-one candidates.

We are of opinion that the plaintiff was far from being an important figure in the sense of anyone who has been brought to our attention as having been adjudicated a public figure. Although marginally involved in politics, the plaintiff can hardly be said to have thrust himself into the "'vortex' of an important public controversy." *Curtis Publishing Co.* v. *Butts,* 388 U. S. at 155. We also do not feel required by the Federal authorities to conclude that the plaintiff's service for the particular candidate as campaign manager in itself gave him the status of a public figure.

We do not reach the question whether the privilege has been lost. We nevertheless agree that there was no evidence of malice.

The judge left the question whether the plaintiff was a public figure to the jury. However, it was a question of law for the court. *Rosenblatt* v. *Baer,* 383 U. S. 75, 88. No harm occurred here, as the jury decided the question correctly.

The defendant contends, in the third place, that a verdict in its favor should have been directed. There was no error in denying the motion. The jury, as already noted, must be taken to have found that the publication of October 9, to which no privilege attached, was defamatory and untrue. That was enough to support the verdict.

*Exceptions overruled.*

THE ACTION AGAINST THE GLOBE NEWSPAPER COMPANY.

This action concerns an alleged libellous publication on October 12, 1963. As in the case of the Herald, Vallis spoke to a Globe reporter about his controversy with the plaintiff. The Globe did not publish anything until after the registry hearings on October 11. We do not repeat the pertinent citations hereinbefore discussed. The publication is shown by a comparison with the record of the registry hearings to be a fair and accurate comment on a judicial proceeding. The publication by the defendant had a privilege which was not lost by reason of malice, for there was none. It is, therefore, not of consequence whether we consider the plaintiff a public figure.

There was error in submitting the case to the jury.

*Exceptions sustained.*
*Judgment for the defendant.*