Fremont-Smith, J.
The plaintiff, Todd Bruenell, brought this action against the defendants, Harte-Hanks Communications, Inc. and Joe Dwinell, alleging damages from defamation and invasion of privacy. The defendants have now moved for summary judgment. For the reasons stated, the defendants, motion is granted in part and denied in part.
BACKGROUND
The material undisputed facts are as follows:
The town of Framingham operates its worker’s compensation program for municipal employees as a self-insurer. The town hired the firm of Buckler, Irvin & Graf to provide administrative support for this program. Each quarter, the personnel department of the town conducts an “Open Case Status Meeting,” in which representatives of the personnel and other municipal departments review the backgrounds and current status of each open workers’ compensation case, and discuss what course of action to take in each case. Buckler, Irvin & Graf provides “open case status reviews,” which are written summaries of each open case, for these meetings.
*128 In December 1989, Buckler, Irvin & Graf provided a status review for the town which included a summary of the worker’s compensation case of Todd Bruenell, the plaintiff. Mr. Bruenell is a former employee of the Town of Framingham who was injured on the job in March 1983. The summary of Mr. Bruenell’s case contained information that Mr. Bruenell received a weekly worker’s compensation rate of $355.20, that the total compensation paid to date was $122,477, that medical costs paid to date were $19,188, and that the town will receive the sum of $68,000 from a settlement of a third-parly action. The status review stated that Mr. Bruenell “injured his right foot when it was caught under the front tire of a truck which was backing up.” It also noted, “An activities investigation has been performed on this employee by Professional Investigators. According to their report dated March 15,1989, they state, that throughout this long and discrete investigation, they have found no evidence of any type of conventional work in the morning, afternoon or evening. They have been able to document Todd’s activities. The employee is very much involved in music and spends extra ordinary [sic] amounts of time at home with this roommate.”
The status review contains contradictory medical information. One doctor reported in September 1986 that Mr. Bruenell has “significant spondylolysis which is a significant contributing factor to his pain. He has significant loss of function [sic] of the right foot and major emotional compromise. It is the doctor’s opinion that he is presently totally disabled and has been since the date of the accident.” Another doctor reported in January 1988, that “it was his opinion that [Mr. Bruenell] had complaints which were subjective in nature and far outweigh any objective physical findings on examination. It was his opinion that the employee was capable of returning to full duty.” The status review indicated that Mr. Bruenell had missed two scheduled examinations.
The status review recommended discussing Mr. Bruenell’s case at the Open Case Status Meeting, and the case was discussed at the Open Case Status Meeting in December 1989.
In April 1990, Joe Dwinell, who was a staff writer for the Middlesex News, received a copy of the status review from an anonymous source. After confirming with the town’s personnel director that the status report had been prepared as part of the town’s administration of the worker’s compensation program, Mr. Dwinell wrote an article entitled, “Report questions town worker disability pay,” which appeared in the Middlesex News on April 22, 1990. The article included the statement, “A sanitation worker, who caught his foot under the front tire of a truck in 1983, has racked up $122,477 in compensation. A private investigator hired by the town says the worker spends his days listening to music and talking with his roommate.” Later, the article stated, “In the case of Todd Brunell [sic], the sanitation worker whose foot was caught under a tire in 1983, a physician hired by the town says he could return to ‘full duty,’ according to the report. The 29-year old man is earning $355 a week — for a total of $122,477 in pay and $19,188 in medical bills to date, the report states. A professional investigator hired by the town to spy on the worker reported that, after a ‘long and discreet investigation,’ there is no evidence that he is working. Brunell’s [sic] lawyer is asking for a $200,000 lump-sum settlement." The article contained descriptions of several other worker’s compefisation cases.
On April 26, 1990, the Middlesex News contained a follow-up article by Mr. Dwinell. This article did not directly mention the plaintiff, but contained reactions by other recipients of worker’s compensation and by town officials to the previous article.
In March 1993, the plaintiff filed suit against Mr. Dwinell and Harte-Hanks Communications, the publisher of the Middlesex News, alleging defamation and invasion of privacy. The defendants responded with a motion for summary judgment.
DISCUSSION
Summary judgment shall be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving parly bears the burden of affirmatively demonstrating the absence of a triable issue, and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Where the party moving for summary judgment does not have the burden of proof at trial, this burden may be met by either submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communication Corp., 410 Mass. 805, 809 (1991). Kourouvacilis v. GeneralMotors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a material fact in order to defeat the motion. Pederson, supra at 17.
DEFAMATION
The defendants assert that, under the “fair report privilege,” they are immune from liability for defamation. Massachusetts law recognizes that this qualified privilege allows those who fairly and accurately report certain types of official or governmental action to be immune from liability for claims arising out of such reports. ELM Medical Laboratory, Inc. v. RKO General Inc., 403 Mass. 779, 782 (1989); Restatement (Second) of Torts §611 (1977). The public policy rationale for the fair report privilege is to give the public the oppor *129 tunity to be informed as citizens and voters. ELM Medical Laboratory Inc. v. RKO General, Inc., supra at 783.
The fair report privilege protects reports of any official hearing or meeting, even though no other action is taken. Restatement (Second) of Torts §611, Comment d (1977). It also protects the dissemination of information about reports filed by an officer or agency of the government. Id. Nor is there any reason that the privilege should not apply to a report relating to matters of public concern prepared for a government entity by an independent contractor. See: Reuber v. Food Chemical News, Inc., 925 F.2d 703, 713 (4th Cir. 1991) (letter written by a government contractor relating to a government contract held to qualify as an “official action” for the purposes of the fair report privilege).
Although the Restatement (Second) of Torts says it is not clear whether the fair report privilege extends to a report of an official proceeding that is not public or available to the public, under Massachusetts law internal memoranda not intended for public disclosure are protected. In Jones v. Taibbi, 400 Mass. 786, 797 (1987), the Supreme Judicial Court cited with approval. Ingenere v. ABC, 11 Media L. Rep. (BNA) 1227 (D.Mass. 1984). Ingenere extended the privilege to investigative memoranda and letters from the General Services Administration which were not available to the public. The Ingenere court’s rationale in so extending the privilege was the public policy benefit of free discussion of governmental affairs.
To qualify for the fair report privilege, the report must be fair and accurate portrayal of the official action, although it may be a rough-and-ready summary that is substantially correct. ELM Medical Laboratory, Inc. v. RKO General, Inc., supra at 783; MiGi, Inc. v. Gannett Massachusetts Broadcasters, Inc., 25 Mass.App.Ct. 394, 396 (1988). In other words, a statement qualifies for the privilege if its “gist” or “sting” is true, so that it produces the same effect on the mind of the recipient which the precise truth would have produced. ELM Medical Laboratory, Inc. v. RKO General, Inc., supra at 783.
Whether the fair report privilege applies to the subject matter of the report is a matter of law to be determined by the judge. Joyce v. Globe Newspaper Co., 355 Mass. 492, 498 (1969). However, whether or not the report is accurate and fair is a question of fact for the jury if there is a basis for divergent views. Id. at 498-99.
We hold that the status review which the newspaper articles discussed is the sort of subject matter to which the fair report privilege applies. The status review is analogous to the investigative memoranda and letters that the Ingenere court held were protected. The fact that the status review was prepared by an outside firm at the request of and for the use of the town government, rather than by the town’s personnel department itself, does not change this conclusion. The public policy purpose of disseminating information about the workings of government is equally compelling where the people who prepare a report requested and used by the government in its decision-making process are government contractors rather than employees.
There were some discrepancies between the portrayal of the plaintiff in the newspaper articles and the status report. Most significantly, the newspaper articles did not mention that one doctor had reported that Mr. Bruenell was totally disabled; nor did it mention that the town will receive $68,000 as a result of a third-party settlement. Whether the articles were fair and accurate enough to produce the same effect on the minds of the readers as the status review itself would have produced is a question of fact for the jury. Summary judgment on the defamation count must therefore be denied.
INVASION OF PRIVACY
If the fair report privilege applies to defamation, it applies equally to the plaintiffs claim of invasion of privacy. Correllas v. Viveiros, 410 Mass. 314, 324 (1991). However, it is not necessary to reach the question of privilege on the invasion of privacy claim. G.L.c. 214 §1B grants the right against unreasonable, substantial, or serious interference with privacy. This statute proscribes disclosure of facts about an individual that are of a highly personal or intimate nature when there exists no legitimate countervailing interest. Mulgrew v. Taunton, 410 Mass. 631, 637 (1991); Restatement (Second) of Torts §652D (1977). There is unquestionably a legitimate countervailing interest in the public’s right to know of a possibly inappropriate manner in which the government is spending its tax money. Summary judgment on this claim is therefore granted to the defendants.
ORDER
For the foregoing reasons, it is ORDERED that the defendants’ motion for summary judgment be DENIED as to Count I and GRANTED as to Count II.