MARY DUNLEA *vs.* R. D. A. REALTY COMPANY.

Suffolk.    November 16, 1938. — November 29, 1938.

Present: FIELD, C.J., DONAHUE, LUMMUS, DOLAN, & RONAN, JJ.

*Landlord and Tenant*, Common stairway. *Negligence*, One owning or controlling real estate. *Practice, Civil*, Discretionary control of evidence.

After the defendant has rested, the trial judge in his discretion may admit evidence for the plaintiff such as might have been introduced in his case in chief.

Evidence that a tenant was injured by tripping on a brass nosing which stuck up at the edge of a landing on a common stairway in an apartment house of the landlord because screws holding it had become loose after the tenancy began, that a janitor in charge of the stairway for the landlord knew that screws holding such nosings on the stairway became loose from time to time and could tell from mopping the stairway when they were loose, and that, when he observed a loose screw, he would tighten it, warranted a finding that the plaintiff's injury was due to the defendant's negligence.

TORT. Writ in the Superior Court dated January 12, 1934.

Before *Donahue*, J., there was a verdict for the plaintiff in the sum of $4,000. The defendant alleged exceptions.

*C. C. Petersen, (P. C. Reardon* with him,) for the defendant.

*J. F. O'Connell, (F. G. O'Neill* with him,) for the plaintiff.

DONAHUE, J. The plaintiff occupied as a tenant an apartment on the fourth floor of an apartment house owned and operated by the defendant. She was injured while walking down a common stairway leading from the third to the second story of the building. The jury returned a verdict for the plaintiff and the case is here on an exception to the refusal of the judge to direct a verdict for the defendant.

On all the evidence it could not rightly have been ruled as matter of law that the plaintiff was not in the exercise of due care, and the defendant now makes no contention

to the contrary. It contends that the evidence did not warrant a finding that the defendant was negligent.

It also contends that certain testimony of one Michaud, who was summoned by the defendant but was called as a witness for the plaintiff after both parties had rested at the trial, cannot here be considered as affirmative evidence on the issue of negligence of the defendant. The witness had varnished the stairway one or two months before the plaintiff's accident and testified as to the condition, at that time, of brass nosings on the edges of the stair treads and of the screws by which they were attached. The record states that he was "Called by the plaintiff in rebuttal" of the testimony of a witness named Hyams who apparently had been called by the defendant. The record does not show that the defendant's present contention was made at the trial or what testimony was given by the witness Hyams. If we assume that the contention is now open to the defendant and that the testimony of Michaud went beyond mere rebuttal of testimony given by Hyams and corroborated testimony introduced by the plaintiff before she rested her case, the contention cannot be sustained. The trial judge in his discretion could properly admit, after the defendant had rested, testimony supporting the plaintiff's contentions which might have been introduced in the plaintiff's case in chief. *Young* v. *New York, New Haven & Hartford Railroad,* 273 Mass. 567, 572. *Carson* v. *Canning,* 180 Mass. 461, 464. *Wright* v. *Foster,* 109 Mass. 57. *Chadbourn* v. *Franklin,* 5 Gray, 312, 315.

The defendant's janitor, who had charge of the stairway in question, was called as a witness by the defendant and was examined as to the condition, soon after the plaintiff was injured, of the stairway and the place where she fell. After the defendant had rested, the plaintiff introduced a written statement signed by the janitor and testimony of oral statements made by him as to the condition of the stairway, contradictory of evidence given by him as a witness. The record indicates that the contradictory evidence was properly limited to the impeachment of his testimony at the trial. *Rankin* v. *Brockton Public Market, Inc.* 257

Mass. 6, 11. Since this evidence was limited at the trial to impeachment of the testimony of the janitor, we do not consider it in our decision of the case.

The plaintiff had come down a flight of eight stairs leading from the third floor to a landing and was at the edge of the landing and about to go down a second flight of eight stairs leading to the second floor when the toe of her shoe was caught by a portion of a brass binding or nosing on the edge of the landing which was "sticking up." She endeavored to grasp a banister at her right but failed to do so and fell to the second floor. There was evidence that there was a rubber mat on the landing which was held in place by the nosing. A witness, who examined the place of the plaintiff's fall soon after its occurrence, described the appearance of the nosing at that spot in words and by illustration. She testified that the nosing was about an inch wide and fastened to the landing with screws, and that, at a point about six inches from one end, the nosing was "raised up so that she could lay her fingers under it," and illustrated "how she put her fingers under it, as it was then standing up." She also testified that the projecting part of the nosing was near a "screw which was loose and not down tight; that the screw wasn't loose so that you could see it," but "that, when her fingers went under it, the screw would move; that it wiggled."

There was evidence that on all the stair treads and landings constituting the stairway there were rubber mats which were not tacked down but were kept in place by brass nosings screwed down at the edges of the stair treads and landings. The witness Michaud, earlier herein referred to, testified as to the condition of the screws by which the brass nosings were fastened when he worked on the stairway a month or two before. He then saw that the screws in the nosings had been there for some time and that "Some would come up a little, but not much; sometimes when I was walking on it, it would spring." He was then asked the question: "You indicate the brass screws would spring?" and answered: "Would come out; we put in new ones where they were slipping." He also testified that he tight-

ened up the screws; that some of the screws were "no good" and new screws were put in their places; that, after the stairs were varnished, the screws were tightened up; and that he did not know how many he tightened, it was hard to tell, he thought it might be a dozen.

The defendant's janitor, who had held that position for over a year and a half before the plaintiff's injury and "had charge of the hallways" in the building and was "in and out of the building at all times," was called as a witness by the defendant and testified that shortly after the accident he examined the place where the plaintiff fell and did not find the nosing on the edge of the landing loose or any screw sticking up. On cross-examination he testified that screws in the nosings got loose from time to time because of people walking over the stairs and "then he would tighten them down," and that he did not tighten the same screws every time; if he saw a screw loose he would tighten it. He would put a new screw in a nosing if there was a screw lost and this he did three or four times a year. He also testified that he "could tell when the screws were working up slack when he was mopping the stairs."

A substantial projection of a portion of a brass nosing at the edge of a stair tread or landing is manifestly a potential source of danger to persons descending a stairway. See *Marquis* v. *John Nesmith Real Estate Co.* 300 Mass. 203; *Fowler* v. *South End Amusement Co.* 299 Mass. 317; *Loudon* v. *Beaulieu,* 277 Mass. 33; *Wheeler* v. *Sawyer,* 219 Mass. 103. Such a condition existed at the edge of the landing at the place and time of the plaintiff's fall. It could be found to have been the result of a loose screw in the brass nosing. The condition which caused the plaintiff's fall was not in existence at the time the plaintiff became a tenant. Therefore the defendant owed the plaintiff an obligation with respect to that condition of danger when it later appeared in an area used in common which remained in its control. Its duty was to use reasonable care to discover and remedy such condition. *Silver* v. *Cushner,* 300 Mass. 583.

A landlord's knowledge or lack of knowledge of a defect, appearing after a letting, on portions of his premises used in common and remaining within his control and his opportunity or lack of opportunity to acquire such knowledge are elements to be considered in determining whether or not he used reasonable care in the discovery of such later appearing defects. In the present case the defendant corporation had put an agent, its janitor, in "charge of" the stairway. His knowledge or opportunity for knowledge of a defective condition on the stairway must be taken to be the knowledge and opportunity for knowledge of the defendant. *Stevenson* v. *Joy*, 152 Mass. 45, 48. *Jamrog* v. *H. L. Handy Co.* 284 Mass. 195, 199–200. *Sarna* v. *American Bosch Magneto Corp.* 290 Mass. 340, 343. *Guthrie* v. *J. J. Newberry Co.* 297 Mass. 245.

There was evidence warranting a finding not only that the cause of the plaintiff's fall was a loose screw in the nosing at the edge of the landing but also that throughout the stairway generally the screws had a tendency to become loose. They would become loose merely from people walking over the stairway; from time to time it was necessary to tighten screws; some screws became useless and had to be replaced by new ones. It was not difficult to determine when screws were getting loose: the janitor could tell by observation when the screws were "working up slack." In view of conditions, known to the janitor, existing generally throughout the stairway, and the likelihood that a dangerous condition might come into existence at the edge of any stair tread or landing, we think there was evidence to support the conclusion that the defendant did not use reasonable care to discover and remedy the dangerous condition at the edge of the landing which caused the plaintiff's injury.

*Exceptions overruled.*