COLUMBIA AUTO PARTS CO., INC. *vs.* SHUMAN
CONSTRUCTION CO. & others.

Suffolk. October 1, 1962. — November 5, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK,
& SPIEGEL, JJ.

*Negligence,* Contractor. *Agency,* Agent's knowledge.

In an action against a contractor constructing an addition to a building
for damage to the plaintiff's property in the cellar occurring one night
after a heavy rain when an unusual backflow came from a city sewer
through drains left unplugged by subcontractors of the defendant, evi-
dence would not have warranted findings that the work of the subcon-
tractors was likely, in the absence of special precautions by the de-
fendant, to cause an unreasonable risk of the damage which occurred or
required him to supervise the details of such work, or that knowledge
of a "general laborer" employed by the defendant "to keep the place
clean and secure . . . [it] at night" and instructed "to call the office if
anything went wrong on the job," that the drains were unplugged when
he left the job preceding the damage to the plaintiff's property, should
be imputed to the defendant; and it was immaterial that the defendant
"had the right to prevent the . . . [drains] remaining in an unsafe
condition."

TORT. Writ in the Superior Court dated April 18, 1958.

The action was tried before *Vallely,* J., and there was a
verdict for the defendant.

*Jacob Stone* for the plaintiff.

*Andrew B. Goodspeed* for the defendant.

CUTTER, J. The defendant Shuman, as contractor, was
building an addition to premises of which the plaintiff
(Columbia) occupied the cellar. There, about January 14,
1958, Columbia's property was damaged after a heavy rain
by an unusual backflow from a city sewer. The backflow
came through drains left unplugged by plumbing and sprin-
kler subcontractors not negligently selected by Shuman.
Shuman "had the right to stop a [sub]contractor when the
work was not being done properly" and "to tell . . . [him]
what to do" but its president did not think he had author-
ity to "direct a subcontractor's men." It was a part of

Shuman's job to see that "sub-contractors complied with the pertinent codes pertaining to their work."

Shuman employed one Aiello, a general laborer, "to keep the place clean and secure . . . [it] at night." He was also "to cement the [sewer] pipes in place," and to do other incidental work. Shuman gave "Aiello no instructions to check the job before leaving" on January 14 "or at any other time." Aiello "in the past" had been told "to call the office if anything went wrong on the job." When Aiello left on January 14, he knew that the drains were unplugged, but did not inform Shuman.

Shuman's president saw the damage on January 15 and "told the plumbing sub-contractor that it was not very bright to leave out the plugs in the piping." There was testimony "that it was unskilful plumbing to leave the plug[s] out."

There was a verdict for Shuman in this action of tort to recover damages not received in settlements with the subcontractors. The case has been argued before us on exceptions to a part of the charge and to the failure of the judge to give two instructions.[1] The essential facts have been stated in their aspect most favorable to Columbia.

There is no merit to an obscure exception (see *Kane* v. *Fields Corner Grille, Inc.* 341 Mass. 640, 646–647) to a portion of the charge dealing with whether Shuman was liable for the negligence of the independent subcontractors. The charge on this issue was at least as favorable to Columbia as was proper. See *Whalen* v. *Shivek*, 326 Mass. 142, 149–152; *Ducey* v. *Springfield Co-op. Bank*, 341 Mass. 449, 450; Restatement 2d: Torts (Tent. Draft No. 7, April 16, 1962), §§ 416, 422, 426, 427. If *Levesque* v. *Hildreth & Rogers Co.* 276 Mass. 429, 435 (dealing with a landowner's liability to invitees where he employed an independent contractor to make elevator repairs) has any relevance in the situation

---

[1] These instructions read, "12. If the jury finds that . . . [Shuman's] employee whose job was to secure the building, knew the drains were unplugged, such knowledge was tantamount to knowledge by . . . [Shuman], and . . . [Shuman] would be liable if it took no adequate action to cause the drains to be properly secured. 13. There is sufficient evidence that . . . [Shuman] had the right to prevent the plumbing remaining in an unsafe condition on January 14, 1958."

before us, no contention based upon the principles of that case was adequately brought to the attention of the trial judge.

Requested instruction No. 12 (see footnote 1) in effect says that, if Aiello knew the drains were unplugged, then Shuman was charged with Aiello's knowledge and is liable if it took no action. This instruction, of course, was defective because it would have imposed liability upon Shuman without regard to whether Shuman was negligent and because it implies that Shuman reasonably should have foreseen that absence of the plugs was likely to result in damage to Columbia. It also improperly states in effect that Aiello's knowledge that the drains were unplugged must be imputed to Shuman.

The trial judge left it to the jury to determine whether extraordinary precautions by Shuman were necessary to avoid an undue risk of damage from the subcontracted plumbing work. The jury's finding for the defendant may indicate that they found no need of such precautions. In any event, we think that no finding on the evidence was warranted that either the subcontracted sprinkler or plumbing work (a) was likely in the absence of special precautions by Shuman to create an unreasonable risk of the harm which occurred (cf. *Sturges* v. *Society for the Promotion of Theological Educ. at Cambridge,* 130 Mass. 414, 415) or (b) required that Shuman supervise the work or place a trained mechanic on the premises to investigate the details of what the subcontractors did. It was not proved that Aiello, a "general laborer," had been employed to check or inspect details of the subcontractors' work. At most, it had been shown that Aiello was to keep the building clean, to secure it, and "to call the office if anything went wrong on the job." When Aiello left on January 14, nothing had "gone wrong." What was proved with respect to the nature of Aiello's instructions and to the scope of Aiello's duties would not permit imputing to Shuman Aiello's knowledge of the uncapped drains. See *Wurm* v. *Allen Cadillac Co.* 301 Mass. 413, 415–416; Restatement 2d: Agency, §§ 229, 272, 275, 283. See also *Stewart* v. *Worces-*

*ter Gas Light Co.* 341 Mass. 425, 436–437. Cf. *Sarna* v. *American Bosch Magneto Corp.* 290 Mass. 340, 342–343; *Dunlea* v. *R. D. A. Realty Co.* 301 Mass. 505. Instruction No. 12 could not have been given.

Instruction No. 13 also relates to Columbia's effort to prove that Shuman itself was negligent. Since no duty on Shuman's part to take any action had been established, it was wholly irrelevant that Shuman had power to act if it had found occasion to do so. The judge was not required to give the instruction.

*Exceptions overruled.*