ANTHONY P. LIQUORI *vs.* THE REPUBLICAN COMPANY & another.[1]

Hampden. October 11, 1979. — November 14, 1979.

Present: HALE, C.J., GREANEY, & DREBEN, JJ.

*Libel and Slander. Practice, Civil,* Directed verdict. *Damages,* Libel.

A newspaper article which gave an incorrect address of a criminal defendant, thus identifying as the defendant an innocent person with the same name as the defendant, was not a substantially accurate report of a judicial proceeding and, therefore, the article was not privileged. [673-675]

In a libel action against the owner of two daily newspapers, there was sufficient evidence to warrant findings that the defendant was negligent in printing an article in one of its newspapers erroneously identifying the plaintiff as the one who had pleaded guilty to a crime and that the negligence was compounded by the reprinting of the article in the second newspaper three days later. [675-678]

In a libel action, the award of damages was not so excessive as to constitute an award of punitive damages and was sufficiently supported by the evidence. [678-682]

CIVIL ACTION commenced in the Superior Court on October 23, 1974.

The case was tried before *Cross,* J.

*Samuel A. Marsella (Robert Crowe & Peter Gould* with him) for the defendants.

*Arthur D. Serota* for the plaintiff.

---

[1] Sidney R. Cook, publisher of the Springfield Union and the Springfield Daily News.

GREANEY, J. The Republican Company (Republican) owns and manages two newspapers, the Springfield Union (Union) and the Springfield Daily News (Daily News), which published articles on June 21, 1974, and June 24, 1974, respectively, stating in substance that Anthony Liquori of 658 Cooper Street, Agawam, had pleaded guilty to a charge of conspiring to break into two Pittsfield business establishments in 1968, and that he had been sentenced to jail for this offense.[2] In fact, it was another Anthony Liquori, then living in Springfield, who had pleaded guilty as reported. Sensing a calumny, the plaintiff brought an action for libel against the Republican and the publisher of the two newspapers, and received a verdict in the amount of $60,000 from a jury. The defendants appealed from the judgment entered on that verdict and from the denial of their motions for judgment notwithstanding the verdict (Mass. R.Civ.P. 50[b], 365 Mass. 814 [1974]) and (in the alter-

---

[2]The Union article read as follows:

*"Break Plot Suspect Gets Year in Jail* Hampden County Superior Court Judge Paul Tamborello Thursday sentenced Anthony Liquori of 658 Cooper St., Agawam, to one year in jail for conspiring to break into two Pittsfield businesses in 1968.

"Liquori was charged with conspiring to break into the City Savings Bank and the Adams Supermarket with six other men, including Harry Schweitzer, David Capuano, Earl Jaycox, Donald Hykel, and Francis Soffen.

"Represented by Atty. Edward DONELLAN, Liquori retracted a plea of innocent and pleaded guilty to the charge."

The Daily News version stated:

*"Break Conspirator Gets One Year* AGAWAM — A Cooper Street man has been sentenced in Hampden County Superior Court to one year in jail for conspiring to break into two Pittsfield businesses in 1968.

"Superior Court Judge Paul Tamborello Thursday sentenced Anthony Liquori of 658 Cooper St. after Liquori, through his lawyer, Atty. Edward Donellan, retracted a plea of innocent and pleaded guilty to charges.

"Liquori was charged with conspiring to break into the City Savings Bank and the Adams Supermarket with six other men, including Harry Schweitzer, David Capuano, Earl Jaycox, Donald Hykel, and Francis Soffen."

native) for a new trial (Mass.R.Civ.P. 59[a], 365 Mass. 827 [1974]). We affirm the judgment as against the Republican and the orders denying posttrial relief. However, the judgment must be modified as to the individual defendant by reason of an agreement filed by the parties after oral argument in this court to dismiss the action as against him. Mass.R.A.P. 29(b), as amended, 378 Mass. 943 (1979). For the same reason we treat the contentions of the two defendants in this court as if they had been made only by the Republican.

Before us the Republican asserts the following: (a) the alleged libel was privileged as a fair report of a judicial proceeding, and the trial judge erred in instructing the jury on this point; (b) the evidence was insufficient to support a finding of negligence as to the two publications; and (c) the verdict was so excessive as to constitute an impermissible award of punitive damages. We turn directly to these questions, saving a recitation of the material evidence for the body of the opinion, as it becomes relevant to the resolution of the issues.

1. *Privilege.* The Republican maintains that, because the newspaper articles were a substantially accurate report of a judicial proceeding, the reports are privileged, and as a consequence cannot constitute the basis for a libel award. *Sweet* v. *Post Publishing Co.,* 215 Mass. 450, 453 (1913). *Thompson* v. *Boston Publishing Co.,* 285 Mass. 344, 348-349 (1934). *Stone* v. *Essex County Newspapers, Inc.,* 367 Mass. 849, 853-854 (1975). The defect in the Republican's argument is that both articles contained an undisputed material error. The plaintiff was *not* the person who appeared in the Superior Court in 1974 to plead guilty to a 1968 charge. *Whitcomb* v. *Hearst Corp.,* 329 Mass. 193, 199 (1952). *Stone* v. *Essex County Newspapers, Inc.,* 367 Mass. at 854. This error occurred in the following manner. The Republican required its reporters to provide a street address for any defendant listed as part of a report of a judicial proceeding. A reporter for the Union wrote a story concern-

ing a defendant named Anthony Liquori who had changed his plea from not guilty to guilty, and the reporter gathered all his information for the story, except the street address of the defendant, from official court records. The indictment in the case had been returned against one "Anthony Liquori . . . of Agawam."[3] Lacking the required address for this defendant, the reporter checked a 1974 telephone directory and found only one listing for Anthony Liquori, namely the address of the plaintiff. The reporter included this address in his story without confirming it with court personnel or with the accused's attorney, whom he mentioned by name in the story.

The Republican asserts that since only the address of the accused was inaccurate, it has published an article which was "substantially true and accurate and entirely fair," and that "[t]his is all that was required." *Thompson* v. *Boston Publishing Co.,* 285 Mass. at 349. However well intentioned the articles may have been, it is established that "[a] publication which identifies a person who had nothing to do with the proceedings as the one against whom the proceedings were directed can be neither fair nor accurate." *Whitcomb* v. *Hearst Corp.,* 329 Mass. at 199. *Stone* v. *Essex County Newspapers, Inc.,* 367 Mass. at 854. While "the States may not impose sanctions on the publication of truthful information contained in official court records open to public inspection" (*Cox Broadcasting Corp.* v. *Cohn,* 420 U.S. 469, 495 [1975]), "no . . . blanket privilege for reports of judicial proceedings is to be found in the Constitution" (*Time, Inc.* v. *Firestone,* 424 U.S. 448, 456 [1976]). "As to inaccurate and defamatory reports of facts, matters deserv-

---

[3] The indictment issued in 1973 for 1968 offenses; presumably, it referred to the town in which the accused was known to have lived in 1968. After the article had appeared in the Union and a complaint had been received by that paper, the reporter discovered that the man who pleaded guilty in 1974 resided in Springfield at that time.

ing no First Amendment protection, . . . we think *Gertz* [v. *Robert Welch, Inc.,* 418 U.S. 323 (1974)] provides an adequate safeguard for the constitutionally protected interests of the press and affords it a tolerable margin for error by requiring some type of fault." *Time, Inc.* v. *Firestone, supra* at 457. It follows that an article which labels an innocent man as a criminal because it refers erroneously to his street address, which the reporter gained from a source outside the court records, is neither substantially accurate nor fair. There was no error in the manner in which the trial judge handled the claimed privilege in his charge[4] (*Sweet* v. *Post Publishing Co.,* 215 Mass. at 455), a conclusion supported by the absence of any objection by defense counsel to that portion of the instructions. *Newton Constr. Co.* v. *West & So. Water Supply Dist. of Acton,* 326 Mass. 171, 177 (1950). See also *Kaltsas* v. *Duralite Co.,* 4 Mass. App. Ct. 634, 639 (1976); Mass.R.Civ.P. 51(b), 365 Mass. 816 (1974).

2. *Evidence of negligence.* The Republican next argues that the plaintiff's evidence was insufficient to

[4]The judge explained the law as to privilege in this manner:

"Now, the defendants claim that the publications set out in [the articles] are justified, and that they are not liable to the plaintiff, because of the common law privilege for reports of a judicial proceeding. Under our law, where a defendant is successful in establishing absolute privilege, there is no liability upon him for the libel. Absolute privilege would apply to newspaper publishers in publishing a fair and accurate report of a judicial proceeding.

"Our Supreme Judicial Court has said that a fair report in a newspaper of pending judicial proceedings is proper, and this privilege extends to all matters which have been made the subject of judicial proceedings. Note, though, you must find the report to be accurate and fair. Thus, if the defendants are to have the benefit of this privilege, which would be a defense in this case, the accuracy required in the published report is substantial accuracy and does not require correctness in all particulars.

"However, if you find [the articles] identify a person who had nothing to do with the judicial proceeding, as the one against whom the proceedings were directed, then the publication can be neither fair nor accurate. And it follows in such circumstances, if you so find, the defendants cannot claim the privilege because it does not apply in those circumstances."

submit to the jury the issue of its negligence in publishing the two articles, and that the articles should have been treated separately by the trial court. We note that the second point was not raised below, despite the opportunity to do so during a colloquy with the trial judge as to the appropriate form for the verdict slip, and we do not consider that issue here.[5] *Trustees of the Stigmatine Fathers, Inc.* v. *Secretary of Admn. and Fin.*, 369 Mass. 562, 565 (1976). *Lexington* v. *Bedford*, 378 Mass. 562, 567-568 (1979).

As to the argument that there was insufficient proof of negligence on the part of the Republican to send the issue to the jury, we must consider "whether the evidence on liability, viewed in the light most favorable to the [plaintiff], would support [his] causes of action. If, upon any reasonable view of the evidence, there is found a combination of facts from which a rational inference may be drawn in favor of the [plaintiff], there was an issue for decision by the jury. . . ." *Chase* v. *Roy,* 363 Mass. 402, 403-404 (1973). *Monterosso* v. *Gaudette, ante* 93, 95 (1979). There was evidence from which the jury could have found that the town residence of the accused in the indictment which the Republican's reporter used for his story dated back to 1968; that the reporter nonetheless checked a current (1974) telephone book in attempting to ascertain the man's address; that court personnel had information as to the accused's Springfield address in 1974; that the reporter was able to determine without difficulty the correct address the same day

---

[5] An issue was raised at the trial whether one or two verdict slips should be provided since there were then two defendants, and the defendants made no objection to what the judge did. In addition, the judge specifically charged that: "The contention of the plaintiff is that there has been a libel by two publications; one in the Springfield Union, and one in the Springfield Daily News. Both publications are owned by the defendant, the Republican Company. And as a result of this libel, it is alleged that the plaintiff suffered damage and harm." There was no objection to this portion of the charge. Mass.R.Civ.P. 51(b), 365 Mass. 816 (1974).

that he was asked to check his story; and that the reporter made no effort to check with the attorney for the true defendant to be sure that he had the correct address, although he printed the attorney's name. The jury also could have found on the evidence that the newspaper recognized at least a "minimal" risk in using the telephone directory as the source of an address; that on the day the first article appeared (June 21, 1974), the plaintiff's brother had informed the then night city editor of the Union about its mistake, the night editor had checked with the reporter, and the reporter in turn had uncovered the correct address. Additionally, the jury could have found that the Union and the Daily News were owned by the Republican, and that they shared common facilities such as a research library, coffee room, and wire room, as well as having the same publisher; that the Daily News would use as "filler material" items which had appeared previously in the Union without independent investigation, and vice versa; that the night editor was aware of this policy of the two newspapers, yet he did nothing between June 21, 1974, and June 24, 1974, to alert the Daily News to the error in the Union article which he had uncovered; and that the Daily News did, in fact, take the Union article and republish it without an independent investigation. Under relevant standards, the issue of the Republican's negligence was properly submitted to the jury, and the jury would have been warranted in finding that the Republican was negligent in printing the Union article, and that the negligence was compounded by the failure to alert the Daily News during the three days between publications, thereby permitting the error to become caught up on the wing.[6] *Stone* v. *Essex County Newspapers, Inc.,* 367

---

[6] We note that the Republican publishes newspapers seven days a week; thus, the fact that the first article appeared on a Friday and the second on a Monday is not significant, since a means of communication between the two papers was available all three days. Furthermore, the night editor of the Union was an agent for the defendant

Mass. at 858. Restatement (Second) of Torts § 580B(c) and Comments g, h (1977).[7]

3. *Size of the verdict.* The Republican argues that the plaintiff's damages, if any, were nominal, and that the verdict was thus so excessive as to constitute an award of punitive damages. The Supreme Judicial Court has stated emphatically that "[w]e reject the allowance of punitive damages in this Commonwealth in any defamation action, on any state of proof . . . ." *Stone* v. *Essex County Newspapers, Inc.,* 367 Mass. at 860. See also *Gertz* v. *Robert Welch, Inc.,* 418 U.S. 323, 350 (1974) ("the private defamation plaintiff who establishes liability under a less demanding standard than that stated by [*New York Times Co.* v. *Sullivan,* 376 U.S. 254 (1964)] may recover only such damages as are sufficient to compensate him for actual injury"). As to libel actions, the rule is one of long standing, for as Mr. Justice Holmes stated in *Burt v. Advertiser Newspaper Co.,* 154 Mass.

---

company which owns both papers in single corporate form and, as a result, notice to him was notice to the defendant. *Twombly* v. *Framingham Gas, Fuel & Power Co.,* 248 Mass. 53, 55 (1924). *Dunlea* v. *R.D.A. Realty Co.,* 301 Mass. 505, 509 (1938). See also *Gateway Co.,* v. *Charlotte Theatres, Inc.,* 297 F.2d 483, 486 n.4 (1st Cir. 1961).

[7]The Restatement, revised in 1976 after the seminal decision in *Gertz* v. *Robert Welch, Inc.,* 418 U.S. 323 (1974), suggests that the relevant standard for negligence of professional disseminators of news is "whether the defendant acted reasonably in checking on the truth or falsity or defamatory character of the communication before publishing it." Restatement (Second) of Torts, § 580B, Comment g (1977). Moreover, the Restatement considers three factors to be of importance in determining whether the defendant acted reasonably in checking the accuracy of the story. The first factor is the time element — is the communication hot news requiring prompt publication or is time available to investigate? Second, is the article informing the public about a matter of public concern or merely spreading idle gossip? Third, what is the extent of the damage to the plaintiff's reputation or the injury to his sensibilities that would be caused by a false communication? *Id.,* Comment h. The evidence properly invited jury consideration of at least the first and third factors in this case. See generally Hallisey & Ferber, Recent Developments in the Law of Defamation, 63 Mass. L. Rev. 241, 243-244 (1978).

238, 245 (1891): "The damages recovered are measured in all cases by the injury caused. Vindictive or punitive damages are never allowed in this State. Therefore, any amount of malevolence on the defendant's part in and of itself would not enhance the amount the plaintiff recovered by a penny, and reasonable cause to believe the charges or absolute good will would not cut it down." However, "actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Gertz* v. *Robert Welch, Inc.,* 418 U.S. at 350. *Stone* v. *Essex County Newspapers, Inc.,* 367 Mass. at 860, and cases cited. Restatement (Second) of Torts § 621, Comment b, § 623 (1977). "In addition, the defendant may introduce evidence of a retraction in mitigation of damages, . . . but the degree of mitigation, if any, is for the jury." *Stone* v. *Essex County Newspapers, Inc.,* 367 Mass. at 861 (citations omitted). As to damages, there was evidence from which the jury could have found that the plaintiff was a lifelong resident of Cooper Street in Agawam who actively participated in community and church affairs; that he was known to a great many of the town inhabitants; and that since 1971 he had been the president and treasurer of Anthony P. Liquori Construction Company, Inc., which developed land and built single family homes throughout the surrounding area serviced by the defendants' newspapers and sold them through a combination of real estate listings and newspapers advertisements (which often included the company's name). There was further evidence that his father, brothers and sister were also involved in the construction business, and that during fiscal year 1975,[8] the Anthony P. Liquori Construction Company, Inc., also located at 658 Cooper Street,

---

[8] The company's fiscal year ran from July 1, 1974, through June 30, 1975.

lost money.[9]  The plaintiff had left for a vacation of a week to ten days the very day of the first publication and could not be reached by telephone.  It could have been found that the plaintiff's absence from the community lent credibility to the belief that he was imprisoned. There was also evidence that a loan officer from a local bank, who had previously given the plaintiff loans for his business and who knew his high business reputation in the community, nonetheless asked the plaintiff when he had been released from prison the first time he saw the plaintiff after the publications; that the bank refused the plaintiff's company a loan without giving a reason in fiscal year 1975,[10] although the company had met all its financial obligations; that the plaintiff's wife worked in a local hairdressing establishment and his children were then in elementary school; and that the plaintiff, his wife, and children constantly had to explain to people that the newspaper stories were untrue, as did his father, brothers and sister.  Finally, the jury could have found that the plaintiff received questions about the articles for up to a year after the publications; that his company continued to lose money in fiscal year 1976; and that he was very upset by the publications himself and also suffered greatly because his wife, his children and the rest of the family had to deny the truth of the articles.  The

[9]On appeal the Republican objects strenuously to the consideration of this evidence on the basis that it was the subject of conjecture and for the further reason that an individual plaintiff cannot recover for corporate loss of profits.  However, the defendants not only made no objection to this line of questioning by the plaintiff's attorney, but *also,* they further developed the now disputed evidence on cross-examination.  They additionally made no specific request for jury instructions relative to this point, nor took exception to the charge as given by the judge.  *Narkin* v. *Springfield,* 5 Mass. App. Ct. 489 (1977).

[10]On this point there was conflicting testimony, the loan officer stating that to the best of his recollection the company *did* receive a loan, and the plaintiff asserting to the best of his, that it did not.  Such conflicting evidence is for the jury to resolve.  *Chase* v. *Roy,* 363 Mass. at 407.

judge instructed the jury that damages in Massachu-
setts in this type of action are limited to actual damages;
that they could not award punitive damages; that the
burden of proof was on the plaintiff; that the "correc-
tion"[11] printed by the Union and the Daily News on
August 5, 1974,[12] could be considered in mitigation of
damages (G. L. c. 231, § 94, as appearing in St. 1943,
c. 361); and that the measure of damages could properly
include an assessment for loss of reputation, personal
humiliation and mental anguish. The Republican was
generally satisfied with the contents of the charge as to
damages, objecting only that the word "compensatory"
was not used in the instructions. Although reasonable
people might differ as to the size of the award — some
considering it excessive, others not enough — the fact is
that competent evidence existed to support it and ap-
propriate instructions were given to confine the con-
sideration of the trier to standards of ordinary compen-
sation. "As with a blow on the face, there may be no

---

[11] The following correction was printed in both papers on August 5,
1974:

### "CORRECTION

"According to the Court records, on June 20, 1974, one named An-
thony Liquori of Agawam pleaded guilty to conspiracy to breaking
and entering certain business premises.

"Our investigation revealed that only one Anthony Liquori was
listed in the telephone book with an Agawam address. The
[newspaper] on June 24, 1974, reported that Anthony Liquori of 658
Cooper Street, Agawam, was the person convicted and jailed. Mr. Li-
quori of 658 Cooper Street, Agawam, informed us he was not con-
victed of any crime.

"In investigating the matter further, we discovered that the Court
records erroneously listed the convicted Anthony Liquori as being
from Agawam when it should have been Springfield. We are pleased
to publish this information as a matter of fairness to Mr. Anthony Li-
quori and our readers."

[12] The jury could have been less than impressed with the correction
in light of the knowledge available to the defendants prior to the sec-
ond publication of the article.

arithmetical rule for the estimate of damages." *Baltimore & Potomac R.R.* v. *Fifth Baptist Church,* 108 U.S. 317, 335 (1883). *Boudakian* v. *Westport,* 344 Mass. 61, 65 (1962). Because of the constitutional considerations involved, we also have exercised the duty of diligence (as did the trial judge) which *Stone* commends to us. *Stone* v. *Essex County Newspapers, Inc.,* 367 Mass. at 861. The evidence is sufficient to dissipate our initial healthy skepticism and we do not otherwise find the verdict oppressive or chilling of the rights of the press. The evidence of damages was such as to bring the injuries within Justice Cardozo's well turned phrase, "The spoken word dissolves, but the written one abides and perpetuates the scandal." *Ostrowe* v. *Lee,* 256 N.Y. 36, 39 (1931).

The judgment is to be modified by the deletion of so much of it as imposes liability on the individual defendant and by the insertion of a provision whereby the action is dismissed as against that defendant. As so modified the judgment is affirmed. The orders denying the motions for judgment notwithstanding the verdict and for a new trial are affirmed. The plaintiff is to have the costs of the appeal.

*So ordered.*