## GUARDIANSHIP OF A MENTALLY ILL PERSON.

Barnstable. November 7, 1985. — March 13, 1986.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Probate Court,* Incompetent person, Guardian ad litem. *Guardian,* Incompetent person.

In the circumstances of a proceeding commenced by members of the family of
an allegedly mentally ill person seeking the appointment of a guardian, this
court set aside an order, entered by a Probate Court judge after dismissal
of the proceeding, directing that the proposed ward pay the fee of the
guardian ad litem who had been appointed by the court under G. L. c. 201,
§ 34, where it appeared that the guardian ad litem had acted primarily for
the court as an investigator, rather than for the proposed ward in determining
what should be done for her best interests and welfare. [95-100]

PETITION filed in the Barnstable Division of the Probate and
Family Court Department on July 16, 1984.

After dismissal of the proceeding, a motion for payment of
the fees of a guardian ad litem was heard by *John V. Harvey,* J.

The Supreme Judicial Court granted a request for direct
appellate review.

*Joyce A. Nettke* for the ward.

NOLAN, J. This is an appeal from an order of the Probate
Court directing a proposed ward to pay the fee of a guardian
ad litem who was appointed by the court to investigate and
report on matters pertaining to the adjudication of the proposed
ward's mental competency. Before the order was entered, the
proposed ward had been adjudged to be competent by the
Probate Court. After reviewing the record, we reverse the
order. We summarize the facts and procedural background of
the case.

On July 16, 1984, the proposed ward's mother and estranged
husband petitioned for the appointment of a guardian for the
proposed ward, who, they claimed, was incompetent and in

need of medication. A judge of the Probate and Family Court for Barnstable County (first judge) appointed the mother temporary guardian pursuant to G. L. c. 201, § 14 (1984 ed.), and also appointed temporary counsel for the proposed ward, whose services were to be limited to ten hours of representation. The judge's decision was based on the certificate of a physician who determined that the proposed ward was incapable of caring for herself and her estate. The first judge entered findings indicating that the proposed ward's conduct "may constitute a danger to herself or to others."

On July 17, 1984, the first judge appointed a second attorney, Ms. L. Kimball Pino, to act as guardian ad litem for the proposed ward, "with instructions to interview the doctor and the ward and report back to the Court." At that time the proposed ward was found not to be indigent. The proposed ward was not present when the appointment of the guardian ad litem was made, had not consulted with her attorney, and was not afforded the opportunity to present any testimony in the matter of the appointment.[1]

On July 25 and 26, 1984, a second probate judge (second judge) conducted an evidentiary hearing on the issue of the proposed ward's mental competency. The guardian ad litem was present at this hearing but did not testify. The second judge found the proposed ward to be competent. The proposed ward was present and testified.

On September 20, 1984, the attorney appointed as temporary counsel filed for fees; the second judge allowed her to recover $350[2] and ordered that the fee be paid by the Commonwealth. On November 1, 1984, without prior notice to the proposed ward, the first judge ordered the proposed ward to pay the guardian ad litem $2,447.14[3] for services. The proposed ward

---

[1] The record is regrettably sparse and we rely on the proposed ward's brief for the statements concerning these difficulties.

[2] The attorney originally filed for fees in an amount greater than $350. However, the second judge decreased the amount in light of the original appointment that provided for counsel for a maximum of ten hours at a rate of $35 an hour.

[3] The guardian ad litem apparently has also submitted an additional bill to the court for $440.25, reflecting her efforts to collect her original fee.

filed a motion requesting that the fees be paid by the Common-
wealth or by the petitioners, and, after a hearing on the matter
on November 29, 1984, the motion was taken under advise-
ment. The record discloses no action directly on this motion.
The proposed ward refused to pay the bill, and the guardian
ad litem subsequently filed a petition for contempt. By agree-
ment of counsel, no action was taken on the petition for con-
tempt pending this appeal. The proposed ward has appealed
the original order of November 1, 1984, directing her to pay
the guardian ad litem's fee, and has refiled her motion seeking
an order that the Commonwealth or the petitioners pay the
$2,447.14 fee. We granted direct review.

The proposed ward asserts that she should not be required
to pay the guardian ad litem since at the time the order was
entered she had not been adjudicated a "person under disabil-
ity," in the words of G. L. c. 201, § 34 (1984 ed.), see *infra*
at 96, and, therefore, there was no "estate" before the court
from which the fees could be paid. G. L. c. 201, § 35 (1984
ed.), see *infra* at 96. She also contends that her rights under
the due process clause of the Fourteenth Amendment to the
United States Constitution and art. 10 of the Massachusetts
Declaration of Rights were violated because the judge's order
regarding payment was made without affording her notice or
an opportunity for a hearing, and furthermore, that it is only
equitable and fair that she should not have to pay for an unsuc-
cessful attack on her mental competency. Finally, the proposed
ward argues that the guardian ad litem did not perform her
duties as such but merely acted as an investigator for the court,
and therefore, should be paid by the Commonwealth. We agree
with the proposed ward that the guardian ad litem acted for
all practical purposes as an investigator for the court. We turn
to a discussion of the issues.

The first judge in the present case appointed a person "to
interview [a] doctor and the ward and report back to the Court"
on matters relating to the mental competency of the proposed
ward. General Laws c. 201, § 34 (1984 ed.), provides: "If,
under the terms of a written instrument or otherwise, a minor,
a mentally retarded person, or person under disability . . . may

be or may become interested in any property real or personal, or in the enforcement or defense of any legal rights, the court in which any action, petition or proceeding of any kind relative to or affecting any such estate or legal rights is pending may . . . appoint a suitable person to appear and act therein as *guardian ad litem . . .* of such minor, mentally retarded person or person under disability or not ascertained or not in being . . ." (emphasis added). *"The reasonable expenses of such guardian ad litem . . . , including compensation and counsel fees, shall be determined by the court and paid as it may order, either out of the estate or by the plaintiff or petitioner"* (emphasis added). G. L. c. 201, § 35. Although the judge never stated that he was appointing the guardian ad litem pursuant to § 34, we assume that he intended to do so.[4]

"A 'guardian ad litem' is one appointed by a court to represent a person unborn or unascertained or who is not considered legally competent to represent himself in a matter before a court. He is considered a special type of guardian and an officer of the court to prosecute or defend, in behalf of another person, a suit or matter to which he is a party." J. F. Lombard, Probate Law & Practice § 1541, at 183 (1962). See *Kossar* v. *State,* 13 Misc. 2d 941, 943 (N.Y. Ct. Cl. 1958). See also *State ex rel. Keating* v. *Bingham,* 233 Ind. 504, 507 (1954). "Generally speaking in all cases where a court appoints a guardian ad litem he acts for the ward and determines what should be done for the best interest and welfare of the ward." Lombard, *supra,* § 913, at 411.

In the present case, we do not propose to describe the variety of roles carried out by guardians ad litem, because their functions will vary with the circumstances of each case. An example

---

[4] A judge also has plenary powers to appoint a guardian ad litem under Rule 5 of the Probate Court, which provides in relevant part: "In addition to making appointments of guardians ad litem in cases required by statute, whenever it shall appear that a minor, or other legally incompetent person or persons unborn or unascertained, are interested in any matter pending, a guardian ad litem for such minor, or other legally incompetent person or persons unborn or unascertained, may be appointed by the Court at its discretion if notice has been given on the pending matter."

of one duty carried out by a guardian ad litem in this Common-wealth is reported in *Superintendent of Belchertown State School* v. *Saikewicz,* 373 Mass. 728 (1977). That case involved medical treatment for a mentally incompetent person. We charged the guardian ad litem with the responsibility of present-ing to the judge, after a thorough investigation, all reasonable arguments in favor of life-prolonging treatment. *Id.* at 757. Accord *Matter of Moe,* 385 Mass. 555, 567 (1982) (once ward is adjudicated incompetent and where sterilization is proposed, we have charged guardian ad litem with the responsibility of zealously representing ward, with full opportunity to meet with ward and cross-examine witnesses at hearing).

The guardian ad litem in this case conducted an investigation by interviewing numerous persons, including the proposed ward, and reviewing medical records. She then filed a report on the proposed ward's social, economic, and psychological history. The guardian ad litem appeared in court, although the record does not reflect the extent of her participation in the court hearing. A careful reading of the report reveals that the guardian ad litem effectively presented an objective report to the judge to assist her in making a determination of the proposed ward's mental competency and of the need for forced medica-tion.[5] In her report, the guardian ad litem recommended that

---

[5] We acknowledge that the guardian ad litem in this case arguably functioned more like an investigator under G. L. c. 215, § 56A (1984 ed.), than as a guardian ad litem under § 34. General Laws c. 215, § 56A, states that "[a]ny judge of a probate court may appoint a *guardian ad litem* to *investigate* the facts of any proceeding pending in said court relating to or involving questions as to the care, custody or maintenance of minor children and as to any matter involving domestic relations . . . . Said guardian ad litem shall . . . report in writing to the court the results of the investigation, and such report shall be open to inspection to all the parties in such proceed-ing or their attorneys. *The compensation shall be fixed by the court and shall be paid by the commonwealth,* together with any expense approved by the court . . ." (emphasis added). We recognize that the provisions of G. L. c. 215, § 56A, appear to be in keeping with other statutes that provide for the care and protection of minors, see generally Rep. A. G. Pub. Doc. No. 12, at 106 (1975), e.g., G. L. c. 119, § 24 (1984 ed.) (investigators appointed in care and protection proceedings), and that the requirement of appointing an investigator is a function of the State's power to act as "parens patriae" in protecting its "endangered" children, *Petition of Catholic Charit-*

the proposed ward be required to receive medication. This recommendation mirrored the position taken by the petitioners. The guardian ad litem did not attempt to advance the proposed ward's argument against forced medical treatment. We note that, while she may not have performed the duties of a guardian ad litem contemplated under § 34, she did fulfil her duties as an investigator. It is also evident from the judge's instructions to her that he perceived her primarily as an investigator.[6]

There was no legal basis for imposing the cost of the guardian ad litem on the proposed ward. It is obvious that the judge gave the matter considerable thought. With commendable candor, he acknowledged that he had "reservations" about ordering the proposed ward to pay the fee.

The Probate Court has set forth internal guidelines for the appointment of guardians ad litem in *Rogers*-type cases.[7] See Office of the Chief Justice of the Probate and Family Court Department, Commonwealth of Massachusetts, Outline of Procedures for Cases Brought Pursuant to *Rogers* v. *Comm'r of Mental Health* (May 10, 1984).[8] The guidelines provide that

---

*able Bureau of the Archdiocese of Boston, Inc., to Dispense with Consent to Adoption,* 392 Mass. 738, 740 (1984). Although we concede an overlap of functions between a § 34 guardian ad litem and one under § 56A, it is nevertheless clear from the wording of the statutes that a guardian ad litem under § 56A is peculiar to cases involving domestic matters or the care, custody, or maintenance of minor children, whereas a guardian ad litem under § 34 represents minors and mental incompetents in other legal proceedings. Furthermore, any similarities between a § 56A investigator and the investigator in the present case are analogous only.

[6] As we recently noted in *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption,* 396 Mass. 485, 486 n.2 (1986), "[t]he designation of an expert or other person, appointed to give an impartial report to the judge, as a guardian to represent the interests of a particular party is potentially misleading and should be avoided."

[7] *Rogers* v. *Commissioner of the Dep't of Mental Health,* 390 Mass. 489 (1983) (case involved forced treatment with antipsychotic medication of institutionalized mental patients).

[8] "OUTLINE OF PROCEDURES FOR CASES BROUGHT PURSUANT TO *ROGERS V. [COMMISSIONER] OF MENTAL HEALTH*

"What follows is an outline of procedures for use in cases arising pursuant

"the [guardian ad litem], if appointed, will be paid from the 03 subsidiary [account] of the division." We are unable to determine from the record before us whether there are funds available from the 03 subsidiary account of the division out of which the guardian ad litem can be paid. Therefore, we remand the case to the Probate Court for consideration of these issues. The Commonwealth, as well as the petitioners and the guardian ad litem, should be afforded an opportunity to be heard.[9] In the event that the 03 account of the Probate Court lacks available funds to pay the guardian ad litem, we direct the judge to explore other budgetary sources for payment. We express no view as to the circumstances under which petitioners may be required to pay.[10]

to the case of *Rogers* v. *[Commissioner] of Mental Health.*

"  . . . .

"G.A.L. [guardian ad litem] Appointment

"A guardian ad litem should only be appointed if requested by motion or on the court's own motion. In either case a G.A.L. should only be appointed after a determination by a judge that one is needed. The role of the G.A.L. is to serve as an independent investigator for the court, not as an advocate for the ward. Counsel for the ward will represent him and act as his advocate.

"Where the court determines that a G.A.L. is needed in addition to counsel, the court should consider limiting the scope of the investigation and report to those matters in controversy. In such cases a professional from the appropriate discipline, rather than an attorney, should be considered.

"The G.A.L., if appointed, will be paid from the 03 subsidiary [account] of the division.

"  . . . .

"G.A.L. Report

"Each G.A.L. should prepare a written report. The report should be given to counsel for the ward and petitioner prior to the hearing date.

"If a full investigation is ordered, the G.A.L. report should be in the form of two documents. The first should deal with issues regarding competency; the second with the substituted judgment and treatment issues. The court should not review the latter part of the report until after the competency issue is determined."

[9] We also suggest that the Department of Mental Health be asked to file an amicus brief in the Probate Court.

[10] We are mindful of the danger of discouraging plaintiffs from bringing petitions for guardianship where the circumstances would warrant such action but where they run the risk of having to pay such expense as the fee of the court appointed investigator.

We therefore reverse the order requiring the proposed ward to pay the fee of the guardian ad litem. The case is remanded to the Probate Court for action consistent with this opinion.

*So ordered.*