## ADOPTION OF KIRK.

No. 92-P-1684.

Hampden. April 15, 1993. - November 23, 1993.

Present: ARMSTRONG, GILLERMAN, & GREENBERG, JJ.

*Probate Court*, Guardian ad litem, Incompetent person. *Guardian*, Incompetent person. *Adoption*, Dispensing with parent's consent. *Evidence*, Communication with social worker, Privileged communication, Expert opinion. *Privileged Communication. Witness*, Expert.

In a proceeding to dispense with the need for parents' consent to adoption of their minor child, a Probate Court judge was not required to appoint a guardian ad litem for the parents, even though the evidence presented revealed that each parent suffered from a diagnosed mental illness, where there had been neither a prior adjudication of incompetency nor evidence before the judge sufficient to find that either parent required the additional assistance of a guardian ad litem at trial. [536-538]

There was no merit to the contention made by the parents in a proceeding to dispense with the need for their consent to adoption of their minor child that, had a Probate Court judge appointed a guardian ad litem for them, the testimony offered by social workers from the Department of Social Services would have been barred by the guardian's assertion of the parents' privilege pursuant to G. L. c. 112, § 135A [538-539]; nor would appointment of a guardian ad litem for the father have precluded the admission of testimony of a social worker assigned to him by the United States Veterans' Administration, where it could be concluded that the father was aware that the information derived from that social worker might be used against him at trial and that it was established that the father was capable of exercising his option to terminate his clinical relationship at any time [539-540].

In a proceeding to dispense with the need for parents' consent to adoption of their minor child, a Probate Court judge properly admitted testimony of the father's social worker as to the father's diagnosis (paranoid schizophrenic), where there was an underlying basis of fact for the admission of the social worker's opinion with respect to the father's mental state. [540]

PETITION filed in the Hampden Division of the Probate and Family Court Department on August 24, 1990.

The case was heard by *Marie E. Lyons*, J.

*Charles G. Murphy* for the parents.

*Richard A. Salcedo* for Department of Social Services.

*Mona Smith* for the minor.

GREENBERG, J. The parents of a four year old boy have appealed from a judgment unfavorable to them which was entered in a Probate Court on a petition filed by the Department of Social Services (department) to dispense with consent to adoption of the child. See G. L. c. 210, § 3, as amended through St. 1989, c. 145. Both parents suffer from chronic mental illness. The child was born in the Bay State Medical Center at Springfield on September 28, 1988.

We briefly sketch the pertinent facts, drawing principally from the judge's finding of facts and reports of the department, fleshed out by the record before us. Both the mother and the father had extensive contacts with the Department of Mental Health; each had been hospitalized at various mental health facilities and had received outpatient supportive services provided by that agency. The child first came to the attention of the department prior to the time the mother and child were to be discharged from the hospital just after his birth. A social worker at the hospital contacted the department after the mother's apparent lack of parenting skills engaged her attention. As a result, the department consulted with the mother and father — both professed a desire to care for the child and a willingness to accept assistance. After the child was born, the mother stayed for about two weeks at the maternal grandmother's home until an appropriate apartment was found for the family. Shortly thereafter, the parents and the child moved into a housing project located in Springfield; they rented a small one-bedroom unit. The department assigned a case worker to the family and supplied a visiting nurse to help the parents with the responsibility of caring for their newborn child. Matters then went downhill. The judge noted that on one occasion the child was found outside the apartment in cold weather without a blanket or appropriate clothing. On another day, the boy was found lying in a pool of urine; his diaper had not been changed from the previous evening. The mother became distressed with the

nurse and the child care workers, whose presence she considered intrusive and intimidating.

By October 19, 1988, less than a month after the child was born, the department, in the belief that it was faced with an emergency, filed a petition under G. L.. c. 119, § 23(C), to secure custody of the child. On the day the petition was filed, the department sought and obtained an order for temporary custody of the child. That was the last time the parents had an opportunity to care for the child. In July, 1989, the parents submitted a stipulation to a District Court indicating their agreement that the child be adjudicated in need of care and protection. The parents were allowed weekly visits at the department's office in Springfield, but these were fraught with so much difficulty — for both parents and child — that they were terminated in October, 1990.

Because no permanent solution appeared in the offing, on August 21, 1990, the department filed a petition under G. L. c. 210, § 3(b) & (c), to dispense with the need for consent to adoption. The court appointed a lawyer to represent the parents. Prior to trial, the parents' counsel, on March 7, 1991, moved the court for appointment of a guardian ad litem on the basis that the parents both suffered from mental illness. The judge denied this request. The record contains no transcript of what discussion preceded the denial of the motion, perhaps for the reason that the parents' counsel did not request an evidentiary hearing on the issue. Counsel was appointed to represent the child, who continued in the care of the same foster parents until the time of trial.

Trial was held during the period June 12 to 24, 1991. The judge promptly filed comprehensive findings of fact and conclusions of law and entered a decree granting permanent custody of the child to the department and dispensing with the consent of either parent to the adoption of the child on any petition sponsored by the department. Represented by different counsel, the parents appealed.

We turn now to the various questions raised by counsel for the parents. Before doing so, we note that there is no chal-

lenge to the judge's findings that both parents are unfit to care for the child in the foreseeable future.

1. The Probate Court judge was not required in this case to appoint a guardian ad litem for the parents, even though the evidence presented at trial revealed that each parent suffered from a diagnosed mental illness. The provisions of G. L. c. 201, § 34, permitting as matter of judicial discretion appointment of a guardian ad litem for a person under disability are available to a judge whenever a determination of mental incompetence has been made. See *Guardianship of a Mentally Ill Person*, 397 Mass. 93, 95-96 (1986).[1] The generally accepted view expressed in case law since the turn of the century has been that where no adjudication of incompetency has been made, in an ordinary action at common law in which the person is represented by an attorney, failure to appoint a guardian ad litem is not error, "if no special reason is shown to the contrary." *McKenna* v. *McArdle*, 191 Mass. 96, 100 (1906). See *Cunningham* v. *Davis*, 175 Mass. 213, 217 (1900). See also *Taylor* v. *Lovering*, 171 Mass. 303, 305-306 (1898). We have, however, had no occasion previously to address the necessity of such an appointment in the context of a termination of parental rights case under G. L. c. 210, § 3. We conclude that in the present case, since there was no prior adjudication of incompetency, the judge was under no mandate to appoint a guardian ad litem for the parents. Counsel for the parents advances the argument that the general principle does not apply because a termination of parental rights proceeding may result in the final severance of the parents' relationship with their children, recognized as a basic constitutional right. *Stanley* v. *Illinois*, 405 U.S. 645, 651 (1972). *Lassiter* v. *Department of Social Servs.*, 452 U.S. 18, 27 (1981).

---

[1]General Laws c. 201, § 34, as appearing in St. 1985, c. 315, in pertinent part reads as follows:

"If . . . [a] person under disability . . . [is involved] . . . in the enforcement or defense of any legal rights, the court in which any action . . . affecting any such . . . legal rights is pending may . . . appoint a suitable person to appear and act therein as guardian ad litem . . . ."

We appreciate that without assistance of a guardian ad litem at trial the ability of a mentally incompetent parent to offer proof of the existence or prospect of an ongoing parent-child relationship might be impaired. But a mentally incompetent person is one who is unable to understand the nature of the legal proceeding and unable to assist in the presentation of his or her case. *Commonwealth* v. *Hill*, 375 Mass. 50, 52 (1978). That a person suffers a mental illness does not make that person, as matter of law, incompetent to manage his or her own affairs or "incapable of taking care of himself." G. L. c. 201, § 6(*a*), as appearing in St. 1985, c. 525, § 1. See *Rogers* v. *Commissioner of Dept. of Mental Health*, 390 Mass. 489, 497 (1983); *Lane* v. *Candura*, 6 Mass. App. Ct. 377, 382 (1978). An individual may be competent for one purpose but not for another, see *Guardianship of Bassett*, 7 Mass. App. Ct. 56, 63 (1979), and is presumed to be competent unless shown by the evidence presented to be incompetent.

The parents' attorney sought the appointment of a guardian ad litem because of his clients' mental health history, but he did not request a competency hearing. Absent such a request, we must determine whether anything at trial reasonably raised a " 'substantial question of possible doubt' about [the parents'] competence" to participate in the proceedings. Cf. *Commonwealth* v. *Rise*, 7 Mass. App. Ct. 106, 107 (1979). We find nothing in the parents' testimony which raises such a question. Both parents were high school graduates; the mother worked as a volunteer in a medical laboratory, as a cashier in a drug store, and as a waitress in a restaurant. The father had completed two years in the United States Army, where he was assigned to a military intelligence unit, and was honorably discharged at the conclusion of his term of service.

Partly because of their use of prescribed psychotropic drugs, the parents, as appears from the record, were competent at the time of the trial. Each parent appreciated the nature of the hearing and was able to assist his or her attorney in making tactical and substantive decisions at the termina-

tion hearing. Neither parent exhibited bizarre or inappropriate behavior during the trial. Cf. *Commonwealth* v. *Tarrant (No. 1)*, 14 Mass. App. Ct. 1020, 1020-1021 (1982) (defense counsel's assertion that defendant had made some "outrageous" statements [although some other responses were rational] not sufficient, without more, to require judge to stop trial for a determination of competency). A guardian ad litem is only appointed by a court to represent a person "who is not considered legally competent to represent himself in a matter before the court." *Guardianship of a Mentally Ill Person*, 397 Mass. at 96. The Probate Court judge had no evidence before her sufficient to find that either parent required the additional assistance of a guardian ad litem at trial. Contrast *Guardianship of Bassett*, 7 Mass. App. Ct. at 64 (a corporate guardian appointed for a mentally retarded person).[2]

2. Similarly unavailing is the argument that had a guardian ad litem been appointed, the testimony offered by the department's social workers would have been barred by the guardian's assertion of the parents' privilege pursuant to G. L. c. 112, § 135A (confidentiality of communication to social worker). During the trial, neither the mother nor the father invoked the confidentiality afforded by that statute. No objection was taken to the social workers' testimony, and the parents further developed the now disputed testimony on cross-examination. For that reason, if no other, the point may not be raised in their appeal. *Liquori* v. *Republican Co.*, 8 Mass. App. Ct. 671, 680 n.9 (1979). Even had a guardian ad litem been appointed to register an objection to the social workers' testimony, the result would be no different, as the statute expressly provides that a social worker may disclose

---

[2]In this case, the parents raised no constitutional claims; they only contended that § 34 required the appointment of a guardian ad litem. The parents' reliance on *In re Alexander*, 223 Conn. 557, 566 (1992), is misplaced. In that case the Supreme Court of Connecticut held that, in the absence of a pretrial request for a competency hearing, due process mandated a hearing only if "the conduct of the parent reasonably suggests to the court, in the exercise of its discretion, the desirability of ordering such a hearing sua sponte."

otherwise confidential information "to initiate a proceeding under . . . [G. L. c. 210, § 3] or to give testimony in connection therewith." General Laws c. 112, § 135A(*e*), inserted by St. 1989, c. 535, § 1. See *Adoption of Diane*, 400 Mass. 196, 197-200 (1987).

3. Likewise, there is no color to the father's argument that the failure to appoint a guardian ad litem affected the judge's ruling which permitted, over the father's objection, testimony of a social worker assigned to him by the United States Veterans' Administration. The first sentence of subsection (*e*) of G. L. c. 112, § 135B, provides that the privilege does not apply in any case involving the dispensing with need for consent to adoption "in which, upon a hearing in chambers, the judge, in the exercise of his discretion, determines that the social worker has evidence bearing significantly on the client's ability to provide suitable care or custody, and that it is more important to the welfare of the child that the communication be disclosed than that the relationship between client and social worker be protected; provided . . . that . . . the patient has been informed that such communication would not be privileged . . . ." G. L. c. 112, § 13B(*e*), inserted by St. 1989, c. 535, § 1. Cf. *Commonwealth* v. *Lamb*, 365 Mass. 265, 270 (1974); *Commonwealth* v. *Souther*, 31 Mass. App. Ct. 219, 224 (1991). Here the judge scrupulously inquired into the extent of the father's understanding of his rights. The record indicates that the father was informed by the social worker that his communications would not be privileged.[3]

From that source, later supplemented by the father's testimony, we conclude (1) that the father was aware that the information derived from that exchange with the social

---

[3]The father's social worker testified that after being given his "*Lamb* warning," the father refused to sign a release authorizing the social worker to speak with his lawyer. Counsel for the father argues that had a guardian ad litem been appointed, the guardian could have authorized the release of records and information from the social worker to the attorney, enabling counsel to prepare an adequate defense for the father. However, he does not specify any prejudice or in what way prior access to the records would have caused a difference in the result.

worker might be used against him at trial and (2) that it was established that he was capable of exercising his option to terminate his clinical relationship at any time. Appointing a guardian ad litem for the father under these circumstances would not have precluded the admission of the social worker's testimony.

4. Finally, the parents argue that the Probate Court judge improperly admitted evidence of the father's diagnosis (paranoid schizophrenic) because his social worker was not qualified to render such an opinion. There was no objection to this ruling. See Mass.R.Civ.P. 46, 365 Mass. 811 (1974). Moreover, "[t]he mere fact that the witness was not a medical doctor [is] not sufficient to disqualify [him] from testifying on psychological matters." *Moore* v. *Fleet Refrigeration & Air Conditioning Co.*, 28 Mass. App. Ct. 971, 972 (1990). The record established that the witness had personal knowledge of the father's psychiatric history as contained in his hospital records, a source which may be reasonably relied on by experts in the field. See *Department of Youth Servs.* v. *A Juvenile*, 398 Mass. 516, 531-532 (1986). Between February, 1990, and July, 1991, he provided outpatient psychotherapy services to the father. There was an underlying basis of fact for the admission of his opinion with respect to the father's mental state.

*Judgment affirmed.*